SEYMOUR v. SPRING FOREST CEMETERY ASS'N et al.

(Supreme Court, Appellate Division. Third Department. April 14, 1896.)

1. APPEAL—DISMISSAL.
    The fact that, on appeal from a final judgment, an interlocutory judgment is also sought to be reviewed in violation of Code Civ. Proc. § 1316, because it had been already reviewed upon a separate appeal, is not ground for dismissing the appeal where other questions arising on the proceedings to take final judgment are also sought to be reviewed.

2. APPEAL—WAIVER—ACCEPTANCE OF PART PAYMENT OF JUDGMENT.
    Plaintiff, by accepting payment of a part of the judgment and the costs of appeal awarded him absolutely on affirmance of an interlocutory judgment, does not thereby waive his right to appeal from the final judgment

on the ground that an item of interest should have been allowed on part of the judgment.

3. BONDS—INTEREST.

In an action on a bond to recover installments, in calculating the interest on the installments as principal sums, a rest is not to be made at the date of the commencement of the action, so as to compound the interest from that date to the entry of judgment.

4. CORPORATIONS—OFFICERS—LIABILITY.

Officers of a cemetery association, acting in good faith, and with reasonable diligence, by the appropriation of funds of the association through a mistake of law in payment of the expenses of the association instead of in the payment of bonds of the association, do not become liable to the bondholders for the funds so expended as for a misappropriation.

Appeal from special term, Broome county.

Action by Martha E. Seymour against the Spring Forest Cemetery Association and others. There was a judgment for plaintiff against the association alone, and plaintiff appeals. Defendant moved to dismiss appeal. Motion to dismiss denied, and judgment affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Edward K. Clark and Roger P. Clark, for appellant.

A. D. Wales, Lyon, Painter & Hinman, and Israel T. Deyo, for respondents.

MERWIN, J. The motion to dismiss the appeal will be first considered. The grounds of the motion are (1) that the appeal was improperly taken, and (2) that the plaintiff has waived her right to take or prosecute it. The action was brought to enforce the collection of certain bonds issued by the defendant corporation in 1855 and 1866. The defendants answered, alleging, among other things, that the bonds were not valid. The issues were by stipulation referred to a referee to hear, try, and determine. The referee decided that the bonds were valid, and that the plaintiff was entitled to an accounting of the receipts from the proceeds of sales of lots in the cemetery of the corporation from July 1, 1878, to the time of the commencement of the action, on July 1, 1889. The form of the interlocutory judgment to be entered upon said report was, upon the motion of the plaintiff's attorney, settled by an order of the Broome special term made the 30th June, 1891, and on the same day the interlocutory judgment so settled was entered on the motion of the plaintiff's attorney. Thereafter the defendants appealed to the general term from the order of June 30, 1891, and also from the judgment of that date, and also made a motion at the general term for a new trial, under section 1001 of the Code of Civil Procedure. This motion was denied, and the order and interlocutory judgment were modified, and, as modified, affirmed, with costs of the appeal against all the defendants. Seymour v. Association (Sup.) 19 N. Y. Supp. 94. On the 23d July, 1892, on motion of the plaintiff's attorney, judgment was entered on the decision of the general term, and in accordance therewith; the costs of the appeal being taxed at $169.45. The reference and accounting under the interlocutory

judgment were then had, and the referee made his report on December 21, 1892. The plaintiff then made a motion at special term for modification of the report and for final judgment. The defendants made a cross motion, asking, among other things, for a dismissal of the plaintiff's complaint as to the individual defendants. Upon these motions an order was granted for final judgment dismissing the complaint as to the individual defendants so far as it demanded a personal judgment against them, and awarded judgment in favor of the plaintiff against the defendant corporation for $14,631.69 damages and $230 costs. Judgment was accordingly entered and docketed on July 4, 1893. On July 20, 1893, the defendants appealed, under the provisions of section 1336 of the Code, directly from the final judgment to the court of appeals. There (144 N. Y. 333, 39 N. E. 365) the judgment and determination of the general term were affirmed, with costs, and judgment upon the remittitur was on the 21st January, 1895, accordingly entered in the supreme court; the costs against the defendants being taxed at $146.48.

The present appeal was taken by the plaintiff on the 28th January, 1895. By the notice an intention is declared to bring up for review certain provisions of the interlocutory judgment of July 23, 1892, and also certain provisions of the interlocutory judgment of June 30, 1891. The interlocutory judgment first named was the one entered on the decision of the general term upon defendants' appeal, and took the place of the last named, which was entered on the order of the special term upon the report of the referee. The claim of the defendants on this motion is that the judgment of July 23, 1892, cannot be here reviewed, because it is, in substance, the judgment of the general term, and that a review here of the judgment of June 30, 1891, is not permitted by section 1316 of the Code, which provides only for review of an interlocutory judgment "which has not already been reviewed, upon a separate appeal therefrom, by the court or the term of the court, to which the appeal from the final judgment is taken." If this claim is tenable, it does not follow that the appeal of the plaintiff should be dismissed; for there are other questions that may be raised on the proceedings to take the final judgment. Code, § 1350. The appeal, being effective for some purposes, should not, upon motion, be dismissed. Whether some particular question can be considered can, if necessary, be more properly determined when we come to the consideration generally of the appeal.

The second ground for the dismissal of the appeal is based on the fact that on the 28th July, 1895, the plaintiff received of the defendant corporation the sum of $6,414.47 in full satisfaction of the bond given by such defendant on the appeal to the court of appeals; and also on the fact that the plaintiff was paid the judgment for costs awarded against the defendants by the general term, amounting to $169.45, and acknowledged satisfaction thereof on the 17th April, 1895. The bond above referred to was an undertaking that the appellants on that appeal should pay all costs and damages which might be awarded against them on the appeal; and that,

if the judgment appealed from was affirmed, the appellants would pay the sum recovered or directed to be paid by the judgment, or the part thereof as to which it was affirmed, except that the liability of the sureties should not exceed $6,414.47. In the receipt given by the plaintiff for the money it is stated that the money shall be applied first to the payment of the costs in the judgment of affirmance, amounting to $146.48, and the balance towards the payment of the damages awarded against the association in the judgment of July 4, 1893, being part of the moneys directed to be paid by the judgment. The only error claimed by the plaintiff as to the judgment against the defendant corporation is that the judgment is not large enough by a certain item of interest, amounting to $602.37. Her receipt of a part of the judgment was consistent with this claim, and should not be held to be a waiver of her right to raise the question which she seeks to raise on the appeal. Knapp v. Brown, 45 N. Y. 207, 210; Clowes v. Dickenson, 8 Cow. 328. Nor does her receipt of the costs awarded to her on the appeal to the general term affect her right to appeal from the final judgment. That award of costs was absolute. Farmers' Loan & Trust Co. v. Bankers' & Merchants' Tel. Co., 109 N. Y. 342, 16 N. E. 539. The motion to dismiss should be denied.

We come now to the questions raised on the appeal. The plaintiff claims (1) that the judgment against the defendant corporation of $14,613.69 is too small by an item of interest amounting to the sum of $602.37, and (2) that she was entitled to have judgment against the other defendants personally for the amount found due her and the costs.

1. The referee, upon the accounting provided for in the interlocutory judgment, found that the total amount of the receipts of the defendant corporation from the sale of lots and the sale of timber from July 1, 1878, to July 1, 1889, was the sum of $21,449.14; that the amount due on the bonds on the 1st day of July, 1889, arising out of such receipts, was the sum of $15,320.81; that there was paid on said bonds from said receipts, between the 1st day of July, 1878, and the 1st day of July, 1889, the sum of $5,559.30, leaving a balance of $9,761.51; and, adding interest upon all deferred payments semiannually as in case of partial payments, which interest amounted to the sum of $2,504.64, there remained due and unpaid from the defendant corporation to the plaintiff upon the bonds on the 1st July, 1889, the sum of $12,266.15. The amount of the judgment is arrived at by adding to this sum the interest on the principal sum of $9,761.51 from July 1, 1889, to the date of the judgment. The plaintiff claims that the interest on the entire sum of $12,266.15 from July 1, 1889, the date of the commencement of the action, to the date of the judgment, should have been added. The interest on $2,504.64 from July 1, 1889, to the date of the judgment is $602.37. This is compound interest, but the plaintiff says that for the purpose of the computation of interest a rest should be made at the date of the bringing the suit. The cases of Howard v. Farley, 19 Abb. Prac. 126, and Connecticut Mut. Life Ins. Co. v. Cleveland, C.

& C. R. Co., 41 Barb. 9, are cited to sustain this view. In the Howard Case it was held that when, by the condition of a bond, the interest is payable at specified times before the principal sum becomes due, such interest, on a demand of it after it has accrued, becomes principal, and will bear interest from the time of such demand, or if a demand is not proved, from the commencement of the suit. In the Connecticut Insurance Case interest was allowed on interest coupons attached to a railroad company bond from the time they became due. This latter case was in effect overruled in Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 465, 32 N. E. 1058, and Beattys v. Town of Solon, 136 N. Y. 662, 32 N. E. 1062. The action here is not an action to recover on a specific promise to pay interest at a certain date, but is an action to recover the amount of certain payments, which it is alleged the corporation ought to have made, but did not, and the plaintiff is allowed interest on the unpaid payments treated as principal sums. We are referred to no authority for making, in such a case, a rest at the date of the commencement of the suit, and in that way allow compound interest. The item claimed by the plaintiff is not, we think, allowable.

2. The more difficult question to determine is whether the defendants other than the corporation are liable in this action for any portion of the claim of the plaintiff. On and prior to June 1, 1853, 11 persons were the owners of about 33 acres of land in the then village of Binghamton, which they had laid out as and for a cemetery, and filed a map thereof in the clerk's office of the county. They had expended large sums in the improvement thereof and in preparing it for burial purposes, and it was known as "The Spring Forest Cemetery." On the 6th December, 1853, at a meeting of the proprietors, at which nine of them were present, it was resolved that a corporation be formed, with nine trustees, and that the corporation purchase of the owners the land referred to, giving therefor bonds of the corporation amounting in the aggregate to $30,-000, "conditioned and covenanting on the part of this corporation that they, for two years from this date, apply one-half of their entire receipts in payment of said bonds, and after the expiration of said two years that they will apply seventy-five per cent. of all their receipts upon said bonds; that said receipts shall be divided and applied upon such bonds semiannually." On the 8th December, 1853, in pursuance of this resolution, a certificate of the incorporation of the defendant the Spring Forest Cemetery Association was duly filed under the act entitled "An act authorizing the incorporation of rural cemetery associations," being chapter 133 of the Laws of 1847, and the laws amendatory thereof. The nine trustees named in the certificate were nine of the proprietors. In June or July, 1854, the land referred to was conveyed to the corporation by the owners. In 1855, at divers dates, 22 bonds, amounting in the aggregate to $15,000, were issued by the corporation. Each bond referred to the purchase by the association of the said property "at the price of thirty thousand dollars, which sum they are to pay, and the interest thereon, by applying towards the payment of the

said sum and interest, for the first two years succeeding the date hereof, one-half of the proceeds of the sales of lots in the aforesaid cemetery and the receipts of the said association, and after said two years seventy-five per cent. of the proceeds of the sales of said lots and the receipts of said association; the said proceeds and receipts to be applied in semiannual dividends, and residue of the said proceeds and receipts to be applied in each year to the improvement of said cemetery, and the necessary expenses thereof"; and each bond stated that it was given to secure the payment of a portion of the purchase money, and the application of the proceeds and receipts as therein specified, and was conditioned for the payment of the sum therein named and interest "by paying and applying upon this bond such portion of the aforesaid proceeds and receipts above particularly described, in semiannual dividends, as the obligee herein will be entitled to receive upon a pro rata division of said proceeds and receipts among all the holders of the bonds given by said association to secure the payment of the said thirty thousand dollars, and shall also apply the residue of said proceeds and receipts in each year to the improvement of the said cemetery, and the necessary expenses thereof." In 1866 the corporation issued six other bonds, amounting in the aggregate to $3,000. In these it was recited that the association had purchased the said property at the price of $30,000, "which sum they are to pay, and the interest thereon from March 28, 1855, by applying towards the payment of said sum and interest one-half of the proceeds of the sales made after March 28, 1855, of lots in the aforesaid cemetery, and of the receipts of the said association after March 28, 1855, the said proceeds and receipts to be applied in semiannual dividends; and residue of the said proceeds and receipts to be applied in each year to the improvement of said cemetery, and the necessary expenses thereof"; and the condition of these bonds was for the payment to the obligee of his proportionate amount of one-half of the said proceeds and receipts, and for the application of the residue of the proceeds and receipts to the improvement of the grounds of the cemetery and the necessary expenses thereof. No other bonds were issued. The 28 bonds above described are the basis of this action, and they are set out in the complaint. It is alleged that the plaintiff is the owner and holder of the same; that since July 1, 1878, no account has been rendered to the holders of the bonds of the income and receipts of the association, or of the amount applicable to the payment of the bonds; that demand has been made of the association and of its officers for an account of the receipts, and such demand has been refused; that the defendants other than the corporation claim to be and are acting as trustees of the association, and have the custody of all the money and property of the said association; that a large amount of money—but what amount the plaintiff is unable to state, further than that it is between five thousand and twenty-five thousand dollars at the time the complaint is made—has been received by the defendants, which is applicable and should be applied on the bonds; that the defendants neglect and refuse to make any

account whatever, refuse to recognize the validity of the bonds, and refuse to make any payment, though such account and payment have often been demanded. Judgment is demanded for an accounting by defendants of all the receipts of the association since July 1, 1878, and that plaintiff be paid the net amount applicable on the bonds, with interest on the sums withheld from the time the payments withheld should have been applied, and that the individual defendants be held personally liable for the payments so withheld, and be adjudged to pay the same. In the answers of the defendants it is admitted that the association was incorporated substantially as alleged; that no bonds were issued other than the alleged bonds mentioned in the complaint; that the individual defendants claimed to be and are acting as trustees of the association, and that as such trustees they have the custody of the funds and property of the association, and that they refuse to recognize the validity of the alleged bonds, and to make payments thereon; that paper writings similar in form and purport to those alleged in the complaint were executed by certain parties, but their validity is denied. All the other allegations of the complaint are denied. Defenses are set up going to the validity of the bonds and the existence of any debt for the purchase money of the property.

Upon the trial of the issues before the referee, it appeared that Giles W. Hotchkiss and Lewis Seymour, who were two of the original owners, and the former a trustee of the association and the latter its secretary, managed and controlled the business and financial affairs of the association from its incorporation down to the death of Seymour, in January, 1873, and that thereafter Hotchkiss continued such management and control down to the time of his death, on July 5, 1878; that, before the death of Seymour, he and Hotchkiss became the owners jointly of all the said bonds, and, after the death of Seymour, Hotchkiss continued to own and control the same to the time of his death, and after that they were transferred to the plaintiff; that from the incorporation of the association down to the death of Hotchkiss the receipts from the sale of lots amounted to about $44,000, and that Hotchkiss and Seymour received as applicable to the payment of the bonds, principal and interest, about the sum of $20,000. It was found by the referee that from July 1, 1878, to July 1, 1889, the aggregate amount received by the corporation for the sale of lots was the sum of $21,-670.89 and for the sale of timber in 1880, $230, and that the proof failed to show how much of the entire sum of the $21,000 of bonds, principal and interest, remains unpaid, but that such balance amounts to several thousand dollars. The referee decided that the bonds were valid; that the plaintiff was entitled, as to the bonds issued in 1855, to have a proportionate amount of 75 per cent. of the proceeds of sales of lots applied thereon, and as to the bonds issued in 1866 an application of the proceeds on the basis of 50 per cent. being applicable to the payment of the bonds; and that the plaintiff was entitled to an accounting by the defendant of the proceeds since July 1, 1878, to the commencement of the action on that basis,

and an accounting for the purpose of ascertaining and stating the exact amount that remains unpaid on the bonds.    Judgment was ordered by the referee in favor of the plaintiff, in accordance with the findings, with costs.

The question of the liability of the individual defendants does not seem to have been considered by the referee, except as it may be involved in one of the findings of law that "the plaintiff is not entitled to judgment against the defendants Erastmus D. Robinson, Tracy R. Morgan, Job N. Congdon, Benjamin Devoe, E. B. Stephens, Alonzo C. Matthews, Harris Rodgers, Robert Brown, and Cyrus Strong for having misappropriated the funds so received by them, unless upon an accounting it shall appear that they have misappropriated said funds."    The same finding, with others substantially in the form made by the referee, appears in the interlocutory judgment entered July 23, 1892, and by such judgment a referee was appointed "to take and state the accounts as herein provided."    The question of personal liability was not considered by the general term.    In the opinion delivered it is said:

"The extent of the liability, if any, of the defendants other than the corporation, is, in effect, undetermined by the referee.    When the hearing shall be had upon the accounting, the facts in regard thereto will be developed, and a conclusion be reached more intelligible than can be declared upon the present state of the evidence.    We forbear to express any opinion upon that subject at this stage of the case."

In the interlocutory judgment, as settled by the special term, and entered June 30, 1891, there was a provision that the plaintiff recover costs generally against all the defendants.    This was modified by the general term by allowing costs against the defendant corporation only, and reserving all questions as to costs against the other defendants until the further direction of the court.    The referee, upon the accounting, found that the amount unpaid on the bonds on the 1st July, 1889, was $42,272.70; that the total amount of the receipts of the corporation from the sale of lots and timber from July 1, 1878, to July 1, 1889, was $21,449.14, of which $15,320.81 should have been paid on the bonds according to the principles laid down in the interlocutory judgment.    It was also found that the amount paid out during the same period upon expense account was $8,800.70.    This did not exceed 50 per cent. of the proceeds, but did exceed, by the sum of $3,347.21, the balance of the proceeds after applying at the rate of 75 per cent. on the bonds of 1855 and at the rate of 50 per cent. on the bonds of 1866.    The claim of the plaintiff is that the individual defendants are personally liable to the plaintiff for this sum of $3,347.21.    The main item of the expense account was the salary of the superintendent of the cemetery, which for about seven years was at the rate of $600 a year, and for three years at the rate of $800 a year.    The superintendent was Mr. Robinson, one of the original defendants, and for many years the president of the board.    A superintendent was necessary, and the salary paid was fair and reasonable for the services rendered.    It is found that the moneys so paid out on expense account were paid with the approval of all the trustees who were members of the board

at the time such payments were made, except the defendant Strong, who took no part in the proceedings of the trustees, and that no separate account was kept by the trustees showing the amount received applicable to the payment of bonds, and the amount applicable to the payment of the cemetery expenses, and payments were made out of the general fund without reference to the source from whence it came.     When this action was commenced, in July, 1889, there were nine trustees, and they were all made defendants.     Since then three have died,—Robinson, Stephens, and Rodgers.     The personal representatives of Rodgers have been substituted in his place.     As to the other two the action has been continued without them.     The defendant Morgan was one of the original proprietors and trustees, though he was not present at the meeting when the formation of the corporation was agreed upon.     The defendants Congdon and Devoe have been trustees since July, 1878; the defendant Matthews from July, 1879; and Brown and Rodgers from 1883 or 1884.     The referee finds that "each of the defendants acted in good faith, and in the exercise of his honest judgment, and the individual defendants have not collectively or separately misappropriated any of the funds belonging to the corporation defendant, and are not personally liable for acts performed by them as trustees of such corporation," and that the plaintiff is not entitled to judgment against any of them.     He also found that "under the complaint plaintiff cannot recover against the personal defendants for money of cemetery lost by negligence of money mistakenly expended for the cemetery."     It may be that the referee in some of his findings went beyond the scope of the reference, still, as the special term, in ordering judgment, adopted the conclusion of the referee that the defendants were not individually liable, and as to them dismissed the complaint, it must be assumed that upon the facts the view most favorable to the defendants was taken.

It is claimed upon the part of the plaintiff that the individual defendants are liable to plaintiff as for money had and received. Assuming that the allegations of the complaint are sufficient to allow the plaintiff to take this position, and assuming that by the clause in the interlocutory judgment as to misappropriation hereinbefore quoted, there is no limitation upon the ground of any recovery by plaintiff, or, if a limitation, that the plaintiff is not bound by it, are the facts such that an action for money had and received will lie?     It is argued that the individual defendants in their answer admit that they have the custody and control of the money that the plaintiff seeks.     The answers cannot properly be construed in that way.     They only admit that the individual defendants are trustees of the association, and as such trustees have the custody of the funds and property of the association.     Such possession is simply the possession of the corporation.     The defendants, as individuals, except the defendant Robinson, have received none of the money. There was no contract between them and the plaintiff.     The title of the money was in the corporation.     "The directors or trustees of a corporation are mere agents.     They have not the legal title to the

corporate property." Mor. Priv. Corp. § 523; Ang. & A. Corp. § 595; French v. Fuller, 23 Pick. 108. What right the plaintiff may have had against Robinson, one of the original defendants, who received for his services a portion of the fund, it is not necessary here to inquire, as Robinson is not now in the case. The defendant Matthews was the treasurer of the corporation, and as such received its moneys, and paid them out on the order of the board of directors. None of the present defendants received to their own use any of the moneys in question. The judgment obtained by the plaintiff against the corporation included those with other moneys. The plaintiff relies on the case of Ross v. Curtis, 30 Barb. 240, affirmed in 31 N. Y. 606. In that case the defendant was supervisor of a town, and had received from the county treasurer a specific sum for the express purpose of applying the same upon certain bonds against the town, some of which were held by the plaintiff. The money had been raised in pursuance of a statute that directed its payment to the supervisor, to be by him applied in payment on the bonds on or before a certain date. It was held that the defendant could not question the validity of the bonds, and that an action for money had and received would lie. A number of cases are also cited where it has been held that a town could maintain an action as for money had and received against the county for moneys raised by taxes on railroad corporations and applied by the county for its general purposes, but which should, under the statute, have been paid over to the town for application on bonds issued by it for the benefit of the railroad corporation. In Mills v. Mills, 115 N. Y. 85, 21 N. E. 714, the suit was for a surplus in the hands of a mortgagee after the payment of the mortgage. Those cases do not seem to sustain the contention of the plaintiff. A cause of action against these individual defendants as for money had and received is not, we think, made out.

It is further argued by the plaintiff that the individual defendants are liable in this action as for a misappropriation to the extent of $3,347.21. It is to be observed that in the complaint there is no charge of misappropriation, or fraud, or negligence, or of any tortious act. And within the rule that the recovery must be according to the allegations of the complaint, it is quite doubtful whether the plaintiff is in a position to raise the question of misappropriation. It is not apparent that by any provision in the report of the referee upon the issues or in the interlocutory judgment there was any design to enlarge the scope of the complaint. Assuming, however, that the question may be considered, can it be said as matter of law, upon the evidence and such findings thereon as the referee on the accounting may have properly made, or the special term be presumed in support of its judgment to have made, that the plaintiff was entitled to a judgment against these defendants as for a misappropriation? The rights of the plaintiff against the corporation are not founded upon any statute, but upon a contract. So that it is not a question whether the moneys were paid illegally or ultra vires, but whether the contract was properly performed. It was finally held that the corporation had violated its contract, and the

question now is whether its agents, the trustees, are personally liable, as well as the corporation, for the deficiency. The evidence tends to show, and we must, I think, assume, that these defendants acted in good faith, and in the exercise of their honest judgment; and that the moneys, the expenditure of which was authorized by them as trustees, and is here complained of, were expended for the benefit of the corporation for its necessary running expenses. The expenditure, therefore, was in the line of their duty to the corporation. They were advised that the bonds were invalid, or had been extinguished. The circumstances under which the corporation had been managed and controlled from 1855 to 1878 by Seymour and Hotchkiss, who during that time became the owners and holders of the bonds, would naturally lead them to question their continued validity. By section 7 of the act under which the corporation was organized (chapter 133 of the Laws of 1847, as amended by chapter 122 of the Laws of 1853, passed and taking effect April 5, 1853), the application of the proceeds of sales of lots to the payment of the purchase money of cemetery lands was limited to the one-half thereof, and the other one-half was directed to be appropriated to improvements and incidental expenses. In 1860, by chapter 163 of the Laws of that year, the act was further amended by authorizing the trustees to issue certificates of outstanding indebtedness for purchase money and for improvements, and it provided for the keeping of a distinct and separate account of such certificates in the cemetery books, and applying at least twice in each year the proceeds of sales of lots "in the manner provided by the seventh section of the act hereby amended." This left the limitation in force as it was made by the amendment of 1853. In 1874, by chapter 245, section 7 was amended, and the limitation referred to was left out. It was, however, restored by chapter 108 of the Laws of 1879. The amendment of the act of 1860 by chapter 433 of the Laws of 1884 did not relate to the manner of the application of the proceeds. So that when these defendants, or a portion of them, in 1879, entered upon the management of the property, they found in the statute this limitation apparently applicable which allowed only 50 per cent. to be applied on the bonds. They found also that in the bonds of 1866 it was stated that the original agreement of purchase was that one-half of the proceeds should be applied on the price of $30,000 and the balance devoted to improvements and expenses. True, the defendants were notified of the claim of plaintiff. It was made by her in or prior to 1880, and in substance it was yielded to and payments made to January, 1883. Payments were then stopped until the questions at issue should be legally determined, but no action was taken by plaintiff to assert her rights until July, 1889. In the meantime the defendants, or such of them as were acting, authorized the expenditure of only so much of the proceeds as was necessary to pay the necessary running expenses, and the character and amount of their expenditures was known to the plaintiff or those that represented her. The balance of the proceeds was preserved, and the plaintiff has, in effect, had the benefit of that. As a rule,

directors or trustees of a corporation, if they act in good faith within the limit of the powers conferred by the charter, using reasonable care and diligence, are not responsible for mere mistakes or errors of judgment (Hun v. Cary, 82 N. Y. 65, 70; 3 Thomp. Neg. § 4103); and it is said that they are not responsible for an excusable mistake of law, even though it relate to the extent of their power under the charter (1 Mor. Priv. Corp. § 557; Thomp. Neg. § 4109; 2 Cook, Stock, Stockh. & Corp. Law, § 682). In Vance v. Insurance Co., 4 Lea, 385, it was held that directors who act in good faith and with reasonable care and diligence, but nevertheless fall into a mistake, either of law or fact, are not personally liable for the consequences of such mistake. The view which these defendants took of the extent of the obligation of the corporation to the plaintiff turned out to be a mistaken one. It was said by the court of appeals, as one of the reasons for its judgment, that the bonds of 1855 represented purchase money, and also improvements, and that, therefore, the agreement to apply 75 per cent. was legal. The corporation, by its corporate action, through its board of trustees, applied to its own use a portion of the proceeds that it had agreed to pay upon the bonds. The fact that these defendants, some or all of them, formed a part of the board when such corporate action was taken, if they acted in good faith, under an honest mistake as to the character, extent, or existence of the contract, should not be held to be personally liable in addition to the liability of the corporation.

It is further argued by the plaintiff that she has a remedy under the provision of the act of 1860, which provided that the trustees should keep a separate account of certificates for purchase money and those for improvements, and apply at least twice a year the proceeds of sales of lots in the manner provided in section 7 of the act of 1847, as amended in 1853. To this proposition it may be said that no such remedy is counted upon in the complaint. This is not an action for damages for neglect of duty. Besides, the bonds of 1855, if they may be termed "certificates," provided on their face for the payment on the purchase money of a greater proportion of the proceeds than the law allowed. This defect was finally deemed to be cured as against the corporation by proof that in fact the term "purchase money," as stated in these bonds, included improvements made by the original proprietors. Until an adjudication to this effect, and especially in view of the statement of the purchase as contained in the bonds of 1866, it might be said with considerable force that the trustees had the right to act on the theory that, as stated in the bonds of 1855, the $30,000 was in fact purchase money, and so a greater proportion of the proceeds than the law allowed was sought to be applied. The act of 1860 did not authorize the application of more than 50 per cent. on purchase-money certificates, and if the trustees had the right to assume that the bonds of 1855 at most had no greater effect than purchase-money certificates, it is not clear that the plaintiff has any good ground for complaint. By section 7, above referred to, it was left to the discretion of the trustees to determine what proportion of the 50 per cent. applicable

to improvements and expenses should be applied on improvements and what proportion to expenses.

We have thus considered the main features of this case, and we find no good reason for disturbing the decision of the special term that the present individual defendants are not in this action personally liable. The judgment should be affirmed.

Motion to dismiss denied, with $10 costs. Judgment and order affirmed, with costs. All concur.