(90 Misc. Rep. 202)
BADE v. FERNCLIFF CEMETERY ASS'N et al.

(City Court of New York, Trial Term.   April Term, 1915.)

Action by Anna Bade upon a purported certificate of indebtedness for $1,-483.28 issued by the defendant Ferncliff Cemetery Association to the defendant John C. Witte, and by him transferred to the extent of $1,400, with interest thereon, to the plaintiff.   Judgment for plaintiff and for Witte, according to their respective interests.

Reversed by Appellate Term, 91 Misc. Rep. 26, 154 N. Y. Supp. 161.

Harry Dubinsky, of New York City, for plaintiff.
Appell & Taylor, of New York City (George H. Taylor, of New York City, of counsel), for defendant association.
Herman S. Goldstein, of New York City, for defendant Witte.

RANSOM, J.   The defendant Ferncliff Cemetery Association has not shown facts requiring or permitting its present directors to repudiate now the written acknowledgment of the association's actual indebtedness to John C. Witte, executed and delivered in behalf of the association on February 8, 1904.   The plaintiff, Anna C. Bade, and the defendant John C. Witte are therefore entitled to judgment upon the promise to pay contained in that instrument, according as their respective interests thereunder admittedly appear.   The material facts of the case are hardly controverted, and its issues are not so intricate as counsel have made them, appear, through efforts to establish or avoid the controlling effect of the several decisions in which affairs of cemetery corporations have been under consideration.   Palmer v. Cypress Hills Cemetery, 122 N. Y. 429, 25 N. E. 983; Thatcher v. Hope Cemetery Association, 126 N. Y. 507, 27 N. E. 1040; Seymour v. Spring Forest Cemetery Association, 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859; Id. 4 App. Div. 359, 38 N. Y. Supp. 726, affirmed on opinion below 157 N. Y. 697, 51 N. E. 1094; Tyndall v. Pinelawn Cemetery, 198 N. Y. 217, 91 N. E. 591; American Exchange National Bank v. Woodlawn Cemetery, 194 N. Y. 116, 87 N. E. 107.   In point of fact, leaving out, perhaps, certain observations by Judge Gray in the case last cited, I find no reported ruling that may be regarded as decisive of the present issue—certainly none adverse to liability of the defendant association upon the instrument which it admittedly uttered in attestation of a fact indubitably true.

The assumption, on the part of those now administering the affairs of the Ferncliff Association, that without judicial direction they ought not to devote its funds to defraying this obligation, is based upon a reasoned belief that the Court of Appeals, in the Woodlawn Case, has so far emancipated cemetery associations from the ordinary rules of law fixing the liability of corporations for their own acts and debts as to relieve this association from liability upon a debt and promise evidenced by a certificate of this character.   The governing board of the association was perhaps justified in asking for an adjudication of their duty in the premises, but I am clear that nothing decided in the Woodlawn Case imposes on them any duty of nonpayment.   In that action, the plaintiff bank sought to hold the cemetery association liable in damages for the loss which the bank sustained through the larcenous act of one Knevals, treasurer of the association.   The association had undertaken to issue certificates of shares, although cemetery associations had no right or power to issue certificates of that kind or in that form.   Certain of these certificates were in Knevals' possession, signed in blank; but the association had in no way authorized him to do anything except retain them.   He embezzled some of them, filled them out in his own favor, and deposited them with the plaintiff bank as security for a personal loan to him.   The association, of course, received no benefit or return from Knevals' act, and the certificates were, as against it, spurious and fraudulent, and in excess of the number of certificates the association had undertaken to authorize.   The learned Appellate Division held, nevertheless, in application of the rule of New York

& New Haven R. R. Co. v. Schuyler, 34 N. Y. 49, and the numerous cases which have followed it, that the certificates in question possessed qualities of quasi negotiability similar to those attributed to stock certificates of business corporations, and that the association was accordingly estopped from denying Knevals' authority and the authenticity of certificates purportedly issued by it but in reality purloined and put out by Knevals. In setting aside the assessment of the bank's loss against the funds of the cemetery association, the Court of Appeals ruled that inasmuch as cemetery associations are not organized for profit, are not contenders in the commercial world, do not seek to market their shares or certificates in that forum, derive their funds only from certain prescribed sources, and have the right to apply these funds only to prescribed purposes—all as laid down in the legislative scheme of their creation—the funds of such an association should be safeguarded from depletion by unauthorized acts of officers, spurious and fraudulent issuance of certificates, and the like, and should be chargeable only with liabilities for purposes authorized by statute, of which limitation every person dealing with them should be deemed to have full notice. Probably all that was essentially decided in the Woodlawn Case was that qualities of quasi negotiability, such as, in the case of stock certificates, create an estoppel in pais against denials of the authority of the officer placing them in circulation, are not attributable to certificates of shares purported to be issued by a cemetery association, inasmuch as such certificates of shares are neither stock certificates nor certificates of a kind which a cemetery association has power to issue for any purpose, and inasmuch as such associations have no power to issue stock certificates at all. The Court of Appeals, however, placed its ruling on the broader consideration of law and policy above indicated, and must fairly be deemed to have laid down the rule stated. But it is obvious that even this broad interpretation of the point passed on in the Woodlawn Case involves nothing decisive of the present issue, because here, as appears beyond peradventure, the certificate was not spurious, but genuine. It was not put out through a larcenous breach of trust by an unauthorized officer, but by the unanimous and deliberated action of the directorate; it was of a kind and in a form which the association had power to issue; it bore on its face evidence of its issuance for a purpose in full compliance with the statute; it evidenced an actual, existent liability contracted for association purposes and explicitly assumed by the association; it represented a liability which the statute explicitly said even the proceeds of the sales of lots might be used to pay; and the association had received, utilized, and retained the full benefit of the expenditures, for which the certificate was promise of reimbursement. It is evident that the Woodlawn decision does not control the case at bar, which remains for consideration on its own merits.

The bulk of the record at bar is documentary, and convenience may be served by a summary of the salient facts as found. The Ferncliff Cemetery Association was incorporated on February 20, 1902, pursuant to section 40 (now section 60) et seq., of the Membership Corporations Law (Laws 1895, c. 559 [Consol. Laws, c. 35]). The site of its cemetery was and is in the town of Greenburg, Westchester county. Permission to the defendant to acquire and use such lands for cemetery purposes was granted by the board of supervisors of Westchester county on April 7, 1902, following the required period of the public advertising of the application, beginning on February 14, 1902. The defendant John C. Witte took an active part in the promotion of the cemetery project, the acquisition of the necessary land and consents, and the organization of the cemetery corporation. Title to the land acquired for cemetery purposes was not in the first instance taken in the name of the cemetery association. On June 5, 1902, the defendant Witte and four others, of whom at least Zebulon G. Wood and Joel Gray Barri were also incorporators of the Ferncliff Association, in which all were interested, incorporated the Ferncliff Realty Company under the Business Corporations Law (Consol. Laws, c. 4). Two days later, Ulrich Simon, the original owner of the land, conveyed it to Wood and the defendant Witte. Wood and Witte subsequently deeded the land to Witte and Henry Meyer, also an incorporator of the realty company, and Witte and Meyer deeded it to the realty company.

Significantly, although the Ferncliff Realty Company was incorporated two days before June 7, 1902, when was started this interesting series of title transfers between directors of the realty company, of whom all but one was also an incorporator of the cemetery association, the first of the three deeds was not recorded until October 27, 1903, and the other two followed to the register's office at two-day intervals. On June 10, 1902, three days after the deed from Simon to Wood and Witte, a comprehensive agreement was entered into between them and the realty corporation, for which Meyer and Barri signed as vice president and secretary, respectively, by which the land was "adjudged and declared" to be of "the fair value of $400,000," and it was agreed that, in consideration of the transfer of the property to the realty company, 2 shares of its capital stock should be issued to each of its incorporators, to wit, Messrs. Meyer, Barri, Wood, Lambertson, and Witte, and the remainder of 8,000 authorized shares should go to Wood and Witte, "unless otherwise directed in writing" by them. These and other facts disclosed by the record at bar indicate the essential indentity of interest running through the transactions of the realty company and cemetery association alike, and also furnish informing commentary on the assumption that commonplace commercial motives and methods never enter into transactions of cemetery corporations and their members, in their suzerainty over "cities of the dead." American Exchange Nat. Bank v. Woodlawn Cemetery, 194 N. Y. 116, at page 125, 87 N. E. 107.

The statute under which the defendant cemetery association was incorporated provided that "at least one-half of the proceeds of the sales of the use of all lots and plats shall be applied to the payment of the purchase money of the real property acquired by the corporation until such purchase money is paid, and the residue thereof shall be applied to preserving, improving and embellishing the cemetery grounds and the roads and avenues leading thereto, and to defraying the incidental expenses and liabilities of the corporation." Membership Corporations Law, § 70 (Consol. Laws, c. 35). The act also provided that "if a cemetery corporation be indebted for lands purchased for cemetery purposes, or for services rendered or materials furnished in preserving or improving its cemetery, the directors * * * may, with the consent of the creditor, * * * issue certificates * * * for the amount of such indebtedness." Membership Corporations Law, § 74. For at least six or seven months prior to the actual incorporation of the cemetery association, Witte had been devoting both time and money to the promotion and organization of the cemetery project—looking up and purchasing land, obtaining consents from property owners and county legislature, developing plans, taking prospective participators in the project out by train and carriage to look over the site, making arrangements for the public advertising required by law, and similar activities. These services continued for several months after the filing of the charter, and all were rendered under a manifest understanding on the part of Witte's associates that Witte would be reimbursed for the moneys paid out by him for the benefit of the corporation and reasonably compensated for the time which he put in. For example, the public advertising required by law as notice of the application to the Westchester supervisors for permission to use the land for cemetery purposes was begun two weeks before the incorporation papers of the cemetery association were filed, and continued up to April following the incorporation. For all this Witte arranged and paid. An itemized bill of his expenditures and time was furnished the company, and soon after its affairs were organized Witte was placed on a salary of $900 per year, for "office services and general supervision of the association's affairs."

On April 20, 1902, an attempt was apparently made to reimburse Witte, for the amount he had paid out, by issuing a certificate of indebtedness in his favor for $1,297.33, which sum, with interest thereon to February 8, 1904, was that for which, on the latter date, was issued the certificate under which suit is brought. The attempted issuance in April, 1902, was without formal action of the corporate trustees, and the certificate was never signed by the proper officers or delivered to Witte. When the company's books were opened later, its journal of liabilities showed the following entry: "Franchise: John

C. Witte. Promotion expenses of John C. Witte per bill No. ———, $1,297.33." The attempted certificate of April 20th was marked "Canceled," and the minutes of the first meeting of the directors, on October 1, 1902, contained an obviously incomplete entry of a resolution authorizing the issuance of certain certificates to Wood and Witte. On April 9, 1903, at a director's meeting participated in by Messrs. King, Witte, Meyer, and Ketner, the minutes of October 1st were corrected by the insertion of the full resolution, which authorized the issuance of a certificate for $3,800 to Witte, "being moneys expended in preliminary work and in looking up land for cemetery purposes." Other transactions by Witte in behalf of and with the association intervened, and on February 4, 1904, a new directorate took office. Four days later, at a meeting participated in by Messrs. John G. Borgstede, Witte, H. O. Smith, John D. Helmke; Henry Meyer, and George J. Fernschild, the question of Witte's reimbursement to date again came up, his bill therefor was discussed in detail, and on Witte's own motion the resolution of April 9, 1903, which had provided for a larger payment to him, was reconsidered and rescinded, and on motion of Messrs. Helmke and Meyer the original item was approved, with the interest thereon from April 20, 1902, and the proper officers were by resolution duly authorized to issue and deliver "a certificate of indebtedness for $1,483.28 to Mr. John C. Witte for money expended, this being in full for all claims." Most of these facts were shown by documentary records of the association, and were confirmed by testimony given by Witte, called as a witness in behalf of the cemetery association. No effort was made to refute Witte's testimony as to the services he rendered and the moneys paid out, or as to what took place at the various meetings referred to, including that of February 8, 1904, although at least one of the participants in that meeting was in court in behalf of the defendant association. The assumption must be that, if called to the stand, he would have confirmed the testimony of Witte. On April 20, 1908, the plaintiff conceidedly paid $1,200 to Witte, in consideration of the transfer to her of the certificate, to the extent of $1,400 and interest from that date.

I think the cemetery association has failed to show facts or rules of law relieving it from obligation to meet the liability evidenced by this so-called "certificate of indebtedness," the salient provision of which was as follows: "Ferncliff Cemetery Association, a membership corporation, hereby certifies that it is indebted unto John C. Witte in the sum of fourteen hundred and eighty-three dollars and twenty-eight cents, for money expended for and on account of cemetery, which amount it hereby promises, covenants and agrees to pay at its office in said city of New York five years from the date hereof. * * * "

In the first place, learned counsel for the cemetery association has contended that the requirement as to transfer only on the books of the company destroys the negotiability of the certificate (Zander v. N. Y. Security & Trust Co., 178 N. Y. 208, 70 N. E. 449, 102 Am. St. Rep. 492), that the certificate does not even possess the virtues of quasi negotiability attaching to stock certificates of business corporations (New York & New Haven R. R. Co. v. Schuyler, supra), and that accordingly Witte and his transferee hold subject to all equities existent between Witte and the association. In the Woodlawn Case, as we have seen, the Court of Appeals held that the certificates of shares were, by reason of form, inherently nonnegotiable; that no prerogatives of quasi negotiability could be claimed for certificates of a cemetery association, issuance of which the latter had not authorized, had no power to authorize, and had lost possession of only through larceny, and that accordingly the bank acquired no better title to the spurious certificates than Knevals had, and was subject to all equities operative between the association and its embezzling officer. Whether the salutary rule of the Schuyler Case would nevertheless be held to shield from possible equities a bona fide purchaser of a bona fide certificate of a kind and in a form which a cemetery association had power to issue, and which it had in fact issued by formal authorization of its directorate, need not be here discussed or decided, although the record contains no indication that the plaintiff was anything but a purchaser in good faith without knowledge of any equities or disposition on the

part of the association to resist payment. Assume that she stands in no better position than Witte, what equities, defenses, or set-offs has the defendant association established against payment of the instrument in the hands of Witte? He did render services and pay out money, for association purposes—in fact, for the very founding of its project. The association received the benefits, ratified, adopted, and approved his acts, and agreed and undertook to reimburse him. At one time it even authorized payment to him of more than the amount of his original bill; but subsequently it was agreed, at a meeting at which he and the new directorate were present and his bill was gone over in detail, that he should accept a certificate for the amount of his original claim, with interest to that date, and that this should be "in full for all claims." Not a fact has been shown here to impeach that account, or that settlement, or to indicate that the association owed Witte a dollar less than the face of the certificate in suit. If the rule of the Woodlawn Case were extended to the certificate at bar, therefore, the plaintiff and Witte alike may recover under it, for there are no equities between either and the association.

In the second place, counsel for the association has urged that recovery may not be had upon the debt and promise evidenced by this certificate, because section 74 of the Membership Corporations Law provides only that certificates of indebtedness may be issued by cemetery associations to defray indebtedness "for lands purchased for cemetery purposes, or for services rendered or materials furnished in preserving or improving its cemetery." The correctness of the contention of plaintiff's counsel that the association has not shown that the certificate was not in fact issued, as the face of the certificate indicates, as evidence of a debt incurred for purposes fairly within the purview of the statute, I do not deem it necessary to pass upon this connection. Witte's expenditures were made and his services rendered, as we have seen, for association purposes. The association not only adopted his acts and reaped the benefit of them, but from the outset acknowledged its obligation to reimburse and recompense him. The debt to Witte thus became undeniably a corporate liability, and the statute explicitly authorized the use even of the proceeds of the sale of lots for "defraying the incidental expenses and liabilities of the corporation (Membership Corporations Law, § 70; American Exchange Bank v. Woodlawn Cemetery, 194 N. Y. 116, at page 125, 87 N. E. 107. Assuming that the certificate in suit was not issued to defray an indebtedness in fact incurred for one of the two purposes enumerated in section 74, the law and policy of this state recognizes no phase of the plea of ultra vires which could prevent recovery on this certificate. The association concededly issued it to pay a debt assumed by the association, a debt which the association had a right to assume. The association had the benefit of the services and expenditures which created the debt, and had the benefit of the settlement with Witte on February 8, 1904, which canceled a larger certificate and led him to accept only the amount of his original bill, with interest. The association may not be heard now to claim that this debt did not fall strictly within the statute, and that accordingly its own act in issuing the certificate imposes on it no liability to those who have parted with value on the strength of the association's act. As was trenchantly said by Judge Finch in Seymour v. Spring Forest Cemetery Association, 144 N. Y. 333, at page 341, 39 N. E. 365, at page 366, 26 L. R. A. 859, where a cemetery association had issued bonds in excess of its statutory authority for property which the corporation had retained: "These [bonds] * * * were its promise to pay, which it could not justly repudiate. That kind of plunder which holds onto the property, but pleads the doctrine of ultra vires against the obligation to pay for it, has no recognition or support in the law of this state." A liberal rule of subsequent statutory sanction and ratification "by the long-continued recognition of the corporation" was applied, and it was held that the bonds were "valid corporate obligations in the hands of the original holders, who were at liberty to enforce them, or had full power and authority to transfer them." And Judge Finch concluded: The corporation "must therefore pay, or its possession (of the benefits retained) becomes a robbery." See, also, Jarvis v. Manhattan Beach Co., 148 N. Y. 652, 43 N. E. 68, 31 L. R. A. 776, 51 Am. St. Rep. 727; Leslie v. Lorillard, 110 N. Y. 519,

532, 18 N. E. 363, 1 L. R. A. 456; Nimis v. Mt. Hermon Boy's School, 160 Mass. 177, 180, 35 N. E. 776, 22 L. R. A. 364, 39 Am. St. Rep. 467; Vought v. Loan Ass'n, 172 N. Y. 508, 518, 65 N. E. 496, 92 Am. St. Rep. 761. When a corporation has issued a certificate of a kind and in a form which it had a right to issue, and it has received and retained the benefits, and others have parted with value on the strength of its act in issuing the certificate, it may not exempt itself from fulfilling its promise by pleading that it did not issue the certificate for a purpose explicitly authorized by statute. While it may not have had the right to issue the certificate, it had the capacity to do so, and is bound by its own acts, especially where manifest wrong would result to innocent parties, and its plea of its own wrongful issuance is designed to enable it to escape altogether a just responsibility and proper corporate liability.

I find nothing in the Woodlawn Case which declares this rule inapplicable to a cemetery association which has regularly issued a certificate, of a kind which it had power to issue for at least some purpose, promising to pay a debt incurred or assumed by the corporation for its own benefit. The essential basis of the decision in that case was the safeguarding of moneys paid in by lot owners from being diverted from the intended purposes through spurious or larcenous issues of association certificates. Funds of a cemetery association are to go out only for expenditures made by it or in its behalf, for strictly association purposes. The suit at bar, however, as I have pointed out, proposes no depletion of the corporate treasury for benefits not received. The certificate relates to a legitimate subject of corporate liability; it bears on its face evidence that it was issued in reimbursement of "money expended for and on account of the cemetery"; the association by it acknowledged its liability in the sum named, and promised to pay the same. Assuming that the instrument could have none of the special rights and immunities possessed by a certificate put out under full statutory protection, was not the power to make such an acknowledgment of actual debt and promise to pay it inherent in the very existence of the corporation? Pusey v. New Jersey R. R. Co., 14 Abb. Prac. (N. S.) 437; Attorney General v. Life & Fire Ins. Co., 9 Paige, 470. Assuming that the paper was not in any sense a negotiable instrument, it was nevertheless a certificate issued by the association, which thereby attested the existence of a fact, and made a promise on which Witte and the plaintiff relied and acted and parted with value. Under these circumstances, is not the association estopped from denying the existence of the fact and fulfilling the promise? Jarvis v. Manhattan Beach Co., supra. In the Woodlawn Case, spurious certificates, larcenously hypothecated by Knevals, the issuance of which the association had not authorized, and which it had no right or power to authorize or issue, were held to be, in law and fact, "nonnegotiable promises to pay money," which the bank took from its assignor (Knevals) "with no other rights against the defendant than he possesses," which, of course, was in that case no right of action at all. The certificate held by the plaintiff is, at least, a "nonnegotiable promise to pay money." The defendant association issued it to Witte, and has proved no equities or defenses between itself and Witte. The plaintiff and Witte may therefore have judgment thereon, pursuant to their respective interests under the assignment.

Submit findings on 3 days' notice. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal.