CASS et al. v. REALTY SECURITIES CO. et al.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. ACTION (§ 50*)—JOINDER OF CAUSES—ACTION AGAINST CORPORATION AND DIRECTORS.

Plaintiffs, claiming to own bonds issued by a corporation secured by lien upon real estate, sued both the corporation and its directors, and complained that property on which they had a lien had been sold, and part of the proceeds used to pay the claims of general creditors, and sought to recover the balance retained by the corporation, and to recover

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the directors the money that had been paid out to the general creditors. *Held*, that there was an improper joinder of causes of action.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 511–547; Dec. Dig. § 50.*]

2. CORPORATIONS (§ 333*)—LIABILITY OF DIRECTORS.

Plaintiffs, claiming to own bonds of a corporation secured by a lien on its property, sued the directors to recover money derived from the sale of property on which plaintiffs claimed a lien, which money had been paid out to the general creditors of the corporation. *Held*, that plaintiffs had no original right to sue the directors, but their right, if any, was derived from the corporation and to be prosecuted as the right of the company, so that, as the company was not harmed by the payment to general creditors, the corporation would have no cause of action against them; there being no allegation that the payment was fraudulent, and the directors of a corporation not being liable for mere errors of judgment, whether the mistake is of law or of fact.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 333.*]

3. PLEADING (§ 8*)—CONCLUSIONS—SPECIFIC CHARGES OF FRAUD.

In a suit against the directors of a corporation, by persons claiming to hold the bonds of the corporation, to recover money paid out, by the directors to general creditors, plaintiffs' petition charged that the directors entered into a scheme to injure and defraud the corporation and its bondholders, and also contained other general charges of fraud and mismanagement; the only specific charge against the directors being that they paid the money received from property upon which plaintiffs claimed to have a lien for the payment of their bonds to the general creditors of the company instead of reserving it for plaintiffs. *Held*, that the complaint did not state a cause of action, as the conclusions pleaded were not supported by specifications of facts.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

4. CORPORATIONS (§ 60*)—"STOCK" AND "BOND" DISTINGUISHED.

Securities issued by a corporation, which were denominated "bonds," contained a promise to pay a certain sum at a fixed time with a stated interest, and further provided that, after the payment of specified dividends on the stock, the holders of the bonds were entitled to a proportionate share in the surplus income, if any. *Held*, that the securities were in effect a species of preferred stock, as "stock" confers upon the holder a part ownership of the assets with the right to share in the profits of the corporation, and on dissolution in the assets after payment of debts, but without a lien on the property, while a "bond" is an obligation to pay a fixed debt with interest, which debt, if secured, is not wiped out if the security proves insufficient.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 1, pp. 830–834; vol. 8, p. 7592; vol. 7, pp. 6660–6664; vol. 8, p. 7804.]

Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Charles W. Cass and others against the Realty Securities Campany and others. From an order overruling separate demurrers to the complaint and granting judgment on the pleading, defendants appeal. Order reversed, and demurrer sustained.

See, also, 144 App. Div. 916, 129 N. Y. Supp. 400.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Grenville Clark (Elihu Root, Jr., and Alfred C. Intemann, on the brief), for appellants.

Walter H. Bond, for respondents.

SCOTT, J. [1] The plaintiffs, claiming to own bonds issued by the Realty Securities Company which were secured by a junior lien upon certain real estate, complain that defendants, other than the Title Guarantee & Trust Company, have diverted a part of the net proceeds of the sale of the mortgaged property to the payment of the general creditors of the Securities Company, and threaten so to devote what remains of said net proceeds. Their claim is that their lien attached to the net proceeds, after satisfaction of the prior liens, and that their right thereto was superior to that of the general creditors. The relief sought is that a receiver be appointed of the assets of the Securities Company; that an accountinng be had of the management, application, and disposition by the individual defendants (who are directors of the Securities Company), and particularly in regard to the proceeds of the sale of mortgaged property; that the said defendants be required to pay to the receiver any money or the value of any property which they have wrongfully, illegally, and improperly paid out or transferred or lost or wasted; that the Securities Company and the individual defendants be enjoined from paying out any moneys of the company for any purpose, except under the order of the court; and that the assets of the company be collected and marshaled.

The amount said to be due upon the whole issue of bonds, and which plaintiffs seek to recover, is for unpaid interest and much exceeds in amount the net proceeds of the sale of the mortgaged property, which is stated at $33,000, of which $20,000 has been paid to general creditors and $13,000 is still in possession of the Securities Company. The plaintiff's contention is that their lien upon the property was transferred and attached to the net proceeds of the sale of the mortgaged premises; that their right thereto was superior to that of the general creditors; and hence that the appropriation of any part of it to the payment of the claims of general creditors was unlawful. The demurrer, besides other grounds, challenges the complaint for general insufficiency and for misjoinder of causes of action. I think that there can be no doubt that the plaintiffs have attempted to set forth at least two causes of action. If so, the complaint is obnoxious to the demurrer whether either or both have been well pleaded. There is a cause of action against the Securities Company to recover the $13,000, part of the proceeds of sale of the mortgaged property, still remaining in its hands. To this action the individual directors are not proper parties. There is also a cause of action attempted to be set out against the individual directors to recover moneys or properties said to have been lost, disposed of, or wasted in consequence by their wrong. These two causes of action rest upon wholly different principles and must be sustained by quite different facts. They are incapable of joinder in one complaint. It may also be, as claimed by appellants, that there are two causes of action stated against the company, one legal and one

equitable; but it is sufficient for present purposes to treat the complaint as containing only the two causes of action above mentioned.

[2] So far as concerns the individual directors, the complaint does not, in my opinion, state a cause of action. The directors, as individuals, owed no duty directly to the plaintiffs. The plaintiff's contract was with the Securities Company, and its claim is against that company. Consequently, whatever right it may have to proceed directly against the directors is a derivative one, and must be prosecuted in the right of the company. In other words, they cannot obtain any relief which the company could not obtain if it sued. Plaintiffs have not, I think, qualified to sue the directors because they have not yet exhausted the remedies against the company; but, passing that point, it seems clear that no action will lie in right of the company because it does not appear that the company has suffered from anything which the directors have done. They have simply paid one class of creditors, instead of another. Furthermore, it is not alleged that the individual directors, even if they have paid general creditors with moneys upon which plaintiffs had an equitable lien, have been guilty of anything more' than on honest mistake. It is well settled that directors are not liable for mere errors of judgment, if they act without corrupt intent. People v. Equitable Life Assur. Soc., 124 App. Div. at page 731, 109 N. Y. Supp. 453, and cases there cited. And this is equally true whether the mistake of judgment refers to the law or the facts. It was so held in Seymour v. Spring Forest Cemetery Association, 4 App. Div. 359, 38 N. Y. Supp. 726, affirmed on opinion below 157 N. Y. 697, 51 N. E. 1094, wherein the claim against the directors was quite similar to that embraced in this complaint, to wit, that the directors had failed to apply to the proper purpose certain funds of the association.

[3] I do not overlook the fact that the complaint charges the directors with having entered into a scheme or plot to injure and defraud the Securities Company and its bondholders, and also contains other general charges of fraud and mismanagement. All those, however, are merely the conclusions of the pleader, and are of no moment except as supported by specification of wrongful acts, and, when we look for the specification, we find nothing more than an allegation that the directors have paid or caused to be paid a part of the proceeds of the mortgaged property to the general creditors of the company, instead of reserving it for plaintiffs. I am therefore clearly of the opinion that the complaint attempts to set up two causes of action which cannot properly be joined, and that the complaint does not state facts sufficient to constitute a cause of action against the individual defendants.

[4] I am also of the opinion that the securities upon which plaintiff claims, although denominated "bonds," and drawn in that general form, are in effect nothing more than a species of preferred stock. The fact that the instrument is called a "bond" is not determinative of its character, for it is our duty to look to the substance of things, and there are many cases wherein securities denominated bonds have been held to be stock, and vice versa. Burt v. Rattle, 31 Ohio St. 116;

Hilson Co. v. State Board of Assessors (N. J. Sup.) 80 Atl. 929. The distinguishing feature of a "bond" is that it is an obligation to pay a fixed sum, with stated interest. It may or may not be secured; but, if it is, and the security proves to be insufficient, the indebtedness is not thereby wiped out. The distinguishing feature of "stock" is that it confers upon the holder a part ownership of the assets and right to participate according to the amount of his stock in the surplus profits of the corporation, and ultimately, on its dissolution, in the assets remaining after the payment of its debts. Burrall v. Bushwick R. Co., 75 N. Y. 211; Plimpton v. Bigelow, 93 N. Y. 592. It is fundamental that a stockholder, whether common or preferred, cannot have a lien on the property of the corporation, even though the stock by its terms is accorded a lien. Cook on Corp. (6th Ed.) § 271; Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769.

The securities upon which plaintiffs claim partake in a marked degree of the distinguishing characteristics of stock. It is true that they contain a promise to pay a stated sum of money at a fixed time, and to pay meanwhile a stated rate of interest; but these obligations are qualified by what follows: It is provided that, after the payment of certain fixed dividends on the common and preferred stock, the holders of the bonds in suit are "entitled to a proportionate share in the surplus income, if any." So upon the liquidation of the company the holders of the bonds are entitled to share, after certain payments have been made, in the surplus capital of the corporation, and finally the bond will be satisfied, not only upon payment of its face value, but upon payment of a ratable proportion of the assets, whether more or less than the amount called for on its face. All these features are characteristic of stock and quite foreign to the accepted definition of a bond. In short, the attempt seems to have been to devise a form of security which should possess all the attributes of stock, including a right to share ratably in the profits and increase in value, and at the same time to preserve a specific lien upon the company's assets which should be superior to the claims of creditors. This cannot lawfully be done, for the two things are inherently inconsistent. It is said that we can sever the good from the bad, and disregard the feature which assimilates these securities to stock, retaining and affirming their validity as bonds. This, as it seems to me, would be to make a new contract for the parties.

The order overruling the demurrer should be reversed, with $10 costs and disbursements to the appellants, and the demurrer sustained, with $10 costs, with leave to the plaintiffs to amend upon payment within 20 days of costs in this court and the court below.

INGRAHAM, P. J., and CLARKE and MILLER, JJ., concur.

LAUGHLIN, J. (dissenting). This is a representative action brought by the plaintiffs as second mortgage bondholders of the appellant company, in behalf of themselves and all other bondholders of their class, for an accounting with respect to a fund of about $33,000 alleged to have been received by the defendant Trust Company as trustee under a second mortgage, given by appellant company to se-

cure the bonds, as the net proceeds of a sale of the mortgaged property, after payment of all prior liens, and delivered by the trustee to the appellant company, about $13,000 of which still remains in its treasury, and it is alleged that the balance, about $20,000, has been wrongfully, negligently, illegally, and in violation of the rights of said bondholders, paid out and disbursed to the general creditors of the appellant company by the individual defendants, who constitute its board of directors.

The plaintiffs allege that bonds of the par value of $428,972.39, of the class of bonds owned by them, were duly issued by the appellant company, certified by the defendant trust company, and negotiated; that said bonds bore interest at the rate of 4 per cent. per annum from the 1st day of April, 1904, payable quarterly on the 1st days of January, April, July, and October in each year; that prior to the commencement of the action the appellant company defaulted in the payments of *interest* due in the years 1908, and 1909, and 1910, and on the 1st day of January, 1911, aggregating more than the fund in question, and about the sum of $50,000; and that by virtue of the provisions of said mortgage the bondholders were given *a lien* upon the mortgaged property to secure the payment of the *interest* to fall due on the bonds, and also the principal thereof. The appellant company is a domestic corporation, engaged in the business of dealing in real property in the borough of Manhattan, New York. The mortgage trust agreement recites that the appellant company has purchased from the "trustees of the Cass Realty Corporation in liquidation, and from said corporation," three parcels of real estate therein described, together with the buildings thereon and their equipment, including furniture and furnishings, and that the appellant company, *as part of the consideration for the purchase of said property,* has agreed to issue and deliver to said trustees "its second mortgage bonds and preferred stock in such proportions of each as the said trustees may elect, but to an amount not to exceed in the aggregate four hundred and thirty-three thousand six hundred and thirty-eight dollars and eighty-nine cents ($433,638.89) par value, * * * dated April 1, 1903, and to be retired or paid on or before April 1, 1913, as is hereinafter provided, all of said bonds to bear interest at the rate of four per centum (4%) per annum upon the unpaid principal thereof, from and after April 1, 1904, payable quarterly on the 1st days of January, April, July and October, both principal and interest to be payable in gold coin of the United States of the present standard of weight and fineness; the said series of bonds to be a lien upon and secured by a mortgage or pledge of all of the said properties, both real and personal, so by said party of the first part (appellant company) acquired from the trustees of the Cass Realty Corporation, and from said corporation." Each bond shows on its face that it is a "second mortgage four per cent. 10-year bond payable in gold" on or before April 1, 1913, with interest at 4 per cent. payable quarterly from April 1, 1904, and contains, among other provisions, the following:

"This bond is one of a series of bonds of the same tenor and date but of varying amounts, which bonds, together with all of the preferred stock of

the obligor, aggregate not more than four hundered and thirty-three thousand, six hundred and thirty-eight 89/100 dollars."

, It is recited in the bonds that they are secured by the mortgage, and then come provisions, important in the decision of this appeal, as follows:

"Said mortgage is a second mortgage upon each of the properties covered thereby, and the lien of such mortgage and of the bonds secured thereby is subject to the parity of right of the said preferred stock as hereinafter set forth and as set forth in said mortgage. This bond is subject to the terms and conditions of said mortgage.

"After payment of dividends upon the preferred and common stock as provided in said mortgage, the holder of this bond is entitled to a proportionate share in the surplus income, if any, remaining after such payments."

It is further provided in the bonds that, in case of default for a period of 60 days in payment of interest on any of the bonds, all of the outstanding bonds may, at the election of the owners of not less than 70 per cent. par value thereof, become forthwith due and payable; that, in case of the sale of any of the properties covered by the mortgage, the net proceeds of the sale, after paying the first mortgage, or adequately providing therefor, and paying or adequately providing for the payment of such other indebtedness assumed by the appellant company upon the transfer to it of said properties, exclusive of second mortgage bonds, "shall be distributed ratably among the holders of second mortgage bonds and such holders of preferred stock as have elected to take preferred stock of the party of the first part in lieu of bonds to an amount not exceeding the par thereof"; that, when notice of· such distribution shall have been published as therein provided, interest upon the amount advertised as distributable shall cease; and that as to such amount "the lien of this bond and of said' mortgage shall cease." The mortgage trust agreement further shows: That it is expressly provided in each bond that:

"Upon the payment and surrender of this bond the holder hereof shall be entitled to receive a certificate" from the appellant company entitling him to receive from it, "in common with holders of such preferred and common stock, his distributive share of the net proceeds and income of any and all assets originally acquired by the Realty Securities Company from the trustees. of the Cass Realty Corporation, or from said corporation, which may remain after the payment of the first mortgages upon said properties and the payment in full of· the second mortgage bonds, the payment in full at par of· all of the capital stock of the Realty Securities Company, preferred and common, issued and delivered in the purchase of said properties * * * and the payment of all debts of said Cass Realty Corporation and its trustees, to the end that each former stockholder of the Cass Realty Corporation, or his assigns, may receive a like proportionate share of the net avails of said properties."

That the appellant company shall be at liberty to sell the mortgaged property, and the defendant trustees shall not be liable to the bondholder for the proceeds of such sale. And that:

"When all of said properties so acquired from said trustees of the Cass. Realty Corporation and from said corporation shall have been sold and the ratable proportions of the net proceeds thereof shall have been paid or provided to be paid to the holder hereof, then and thenceforth this bond and the lien of said mortgage shall forthwith cease and determine and this bond shall be surrendered for cancellation upon receiving the last of such distributive payments."

It will be observed that the parity of right of the preferred stock with the bonds is to be determined by considering the provisions of the mortgage, as well as those of the bonds. A blank form of the bonds forms part of the mortgage trust agreement, and in that agreement immediately precedes the mortgage proper, which *commences* with the usual witness clause, "Now, therefore, this indenture witnesseth," and then describes the property mortgaged, which it is recited is the same as that purchased by the appellant company from the trustees of the Case Realty Corporation, and that the conveyance to the trustees is in trust for the "benefit and security" of the bondholders. The mortgage then contains, among other things, a covenant on the part of the mortgagor to pay the interest on the bonds as it falls due, and further provides that, in the event of a sale of any of the property, the net proceeds of such sale, after paying the first mortgage upon the parcel or parcels sold, or providing for the payment thereof, and after paying or providing for the payment of the other indebtedness assumed by the appellant company upon the transfer to it of said properties, exclusive of second mortgage bonds, "shall be distributed as follows, that is to say: Out of the net proceeds of any and every sale of property covered by this mortgage, whether such sale be made by the party of the first part or upon the foreclosure of this mortgage, there shall first be paid any unpaid interest upon said bonds, and the balance of such proceeds shall be divided ratably among the holders of the bonds secured hereby and of the preferred stock hereinbefore referred to (including scrip), until the whole par value of such preferred stock and bonds shall have been paid in full and the amount or amounts so distributable to bondholders are the net proceeds intended to be referred to in the above condition." The mortgage further provided that if all of the property should not be sold on or before the 1st day of April, 1913, the appellant company would on that day pay any balance remaining unpaid on the principal of the bonds; that after dividends, not exceeding 4 per centum per annum, shall have been paid or provided to be paid on the preferred and common stock, "all other surplus income in any year available for dividends shall be equally and ratably paid as interest or dividends, as the case may be, to the holders of second mortgage bonds, preferred stock (including scrip) and common stock"; and that, in the event of a sale of any of the property, bondholders were at liberty to purchase, in which event the bonds held by them were to be received as part payment. The complaint contains no allegation that any preferred stock was issued; and since the total issue of both bonds and preferred stock was to be only $433,638.89, and bonds to the extent of $428,972.39 were issued, preferred stock could have been issued subject to the provisions of the mortgage trust agreement, only to the extent of $4,666.50. It is further alleged that the appellant company is hopelessly insolvent and with no assets other than the fund in question.

The demurrers are all alike, and are interposed upon the grounds: (1) That the complaint fails to state facts sufficient to constitute a cause of action; (2) that causes of action have been improperly united,

in that a cause of action against the appellant company for a breach of contract is united with one in tort against the individual defendants in failing to perform their duties as directors, and that the plaintiffs have united with these a separate cause of action against the appellant company and the individual defendants for an accounting; (3) that there is a defect of parties, in that the preferred stockholders of the appellant company are not joined; and (4) that causes of action have been improperly united, in that no cause of action affects all of the parties defendant.

The complaint contains allegations appropriate to relief on theories on which it would be difficult to overrule the demurrer for misjoinder of causes of action; but I am of opinion that it can be sustained on the ground that it sets forth facts showing but a single cause of action for an accounting with respect to this *fund* on which, on the facts alleged, the bondholders have a lien and are entitled to have the fund applied in payment of the *interest* due on the bonds. The allegations of the complaint to which reference has been made, and the provisions of the mortgage trust agreement stated and quoted, clearly show that the fund of about $33,000 constitutes "net proceeds" applicable to the payment of interest due on the bonds, and that question needs no further consideration. This is not an action by a general creditor of the corporation, who would be required to first reduce his claim to judgment, but it is a bill in equity by and in behalf of bondholders, who are the cestuis que trust under the mortgage trust agreement, for the application of the proceeds of a sale of the mortgaged property, on which they have a lien to the payment of the interest due on their bonds, and on the facts alleged they are the only parties in interest, for they are the equitable owners of the entire fund. See Brockett v. Lewis, 144 Mich. 560, 108 N. W. 429; Farmers' Loan & Trust Co. v. Westchester County W. Co., 143 App. Div. 78, 127 N. Y. Supp. 569, 571; Ettlinger v. P. R., etc., Co. et al., 142 N. Y. 189, 193, 36 N. E. 1055, 40 Am. St. Rep. 587. It is essential that the action affect all of the parties defendant, but it is not necessary that it affect them all alike. People v. Equitable Life Assurance Society, 124 App. Div. 714, 724, 729, 109 N. Y. Supp. 453, and the fact, therefore, that the individual defendants are only accountable for part of the fund, is no objection to joining them with the corporation. The appellant company received the proceeds of the sale of the mortgaged premises impressed with the trust for the benefit of the bondholders, and it became a trustee for them with respect thereto; and on the facts alleged the directors are accountable to the bondholders for that part of the fund which they have diverted.

The principal question presented by the appeal is whether the mortgage trust agreement, in so far as it purports to create a lien on corporate property in favor of the bondholders, is void on the theory that the bonds are in effect preferred stock, and that it was not competent to give stockholders a preference over general creditors, which is a well-settled rule of law. Cook on Corporations (6th Ed.) § 271; Warren v. King, 108 U. S. 389, 2 Sup. Ct. 789, 27 L. Ed. 769; Ellsworth v. Lyons, 181 Fed. 55, 104 C. C. A. 1; Field v. Lamson &

Goodnow Mfg. Co., 162 Mass. 388, 38 N. E. 1126, 27 L. R. A. 136; Chaffee v. Railroad Co., 55 Vt. 110. See, also, section 66, Stock Corporations Law (Consol. Laws 1909, c. 59).

The learned counsel for the respondents contends that the obligation of the appellant company to pay the principal as well as the interest on the bonds, for both of which the lien is given, is absolute, and that the right of the holders of the bonds to insist on payment and on their lien is not affected by the provision by which an attempt is made to give holders of preferred stock a right to share in the proceeds of the sale of the property, or by the provision by which bondholders may acquire the right to share in the surplus income and surplus assets with the holders of the common and preferred stock. It was, I think, as contended, optional with the bondholders whether to surrender their bonds and participate in surplus assets, or whether to participate in surplus income with common and preferred stockholders, and that required an election on their part, which, so far as appears, has not been made, and they were at liberty to abandon this valuable privilege. Hotchkiss v. Nat. Bank, 21 Wall. 354, 22 L. Ed. 645. At any rate, we are not now concerned with the distribution either of surplus *income* or surplus *assets* of the appellant corporation, and as to those no lien was given and no lien is claimed. The provisions with respect thereto are quite independent of and are capable of severance from the rights of the bondholders with respect to the payment of the interest and principal due on their bonds. Neither statutory law nor public policy forbids giving a lien on property purchased to secure the purchase price thereof, and, in so far as the bonds were given for the purchase price of the assets of the Cass Realty Corporation, I am of opinion that the lien given to secure their payment was not rendered invalid by the attempt in the same instrument to create a lien in favor of the preferred stockholders, which if not authorized by law is void.

I am of opinion that the lien is good for the *principal* of the bonds as well as for the interest; but since the lien now asserted is only for the *interest* which was payable unconditionally, and with respect to which there was no attempt to create a right of parity between the stockholders and the bondholders, it may not be essential for plaintiffs to sustain the lien as to the principal. The assets of the Cass Realty Corporation were purchased at a stipulated price. I see no legal objection to an agreement between the vendor and vendee of property to the effect that a mortgage should be given on the property to secure the interest on the purchase price, payable periodically for a definite time, even though the principal was to be paid by the issuance of corporate stock of the vendee. If a lien could not be given for the principal thus represented by stock, it could be given for the interest, and, if an attempt were made to give a lien for both, it could be sustained as to the interest. It may be said that it would not be competent to give a lien on the corporate stock for the payment of dividends, and that, if these bonds are in effect preferred stock, then the interest is in effect interest or dividends on the stock. The answer to such contention is that the bonds are not in effect preferred stock. There has been an attempt to give the bondholders *certain* rights of stockholders

in given contingencies which have not transpired; but a marked distinction is made between the bonds and stock and the rights of the holders of each. If it had been supposed or intended that the effect of each was the same, both would not have been provided for. Where the provisions of a contract, some of which are valid and some void, are severable, the valid provisions may be sustained and enforced. Leavitt v. Palmer, 3 N. Y. 19, 51 Am. Dec. 333; 9 Cyc. 564; Hotchkiss v. Nat. Bank, supra; Reed v. Helois, 64 N. J. Eq. 231, 53 Atl. 1057. It clearly appears that there is more due for unpaid interest on the bonds than the amount of this fund, and by the express terms of the mortgage trust agreement, on a sale of the premises, such as has been made, the interest on the bonds was to be paid before there could be any distribution to stockholders. I am of opinion that the lien of the bondholders, given by the mortgage upon the property and the proceeds of a sale, for the payment of this interest, was valid and should be enforced.

It follows, therefore, that the judgment and order should be affirmed, with $10 costs and disbursements, but with leave to appellants to withdraw their demurrers and plead over, on payment of the costs in this court and at Special Term.

---

### SUGERMAN v. DENNETT SURPASSING COFFEE CO.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

FALSE IMPRISONMENT (§ 15*)—ACTS OF SERVANT—SCOPE OF AUTHORITY.

    Where, in an action against a corporation for false arrest, defendant did not deny that its servant who caused plaintiff's arrest was its manager, and there was evidence justifying an inference that he was in fact manager of the restaurant, and acted within what he supposed was the scope of his authority, it was error to dismiss the complaint as to the corporation, on the theory that the relation between it and the person causing the arrest had not been sufficiently proved.

    [Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67; Dec. Dig. § 15.*]

Appeal from Trial Term, New York County.