## APPEAL OF I. UNTERBERG & CO., INC.

Docket No. 1431.   Submitted April 29, 1925.   Decided July 10, 1925.

1. The name by which an instrument is denominated, either on its face or on a corporation's books, is not conclusive as to its character, and its true nature will be determined by looking to its terms and legal effect.

2. A corporation, in consideration of the transfer to it of the assets and business of a partnership, issued to the partners, in

amounts equal to the total actual value of the property paid in by them, shares of its common stock and debenture notes containing a clause subordinating the rights of the payees to claims of general creditors of the corporation. *Held*, that the notes are not to be regarded as preferred stock but represent borrowed capital, and may not be included in invested capital.

*J. R. Little, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and PHILLIPS.

The taxpayer appeals from the determination of a deficiency of $9,226.52 income and profits tax for the calendar year 1918. The entire deficiency is the result of the exclusion by the Commissioner from invested capital of the amount of $236,655.71, represented by three debenture notes which the taxpayer claims should be treated as preferred stock for property bona fide paid in. The character of the instruments is the sole issue.

### FINDINGS OF FACT.

The taxpayer is a New York corporation. It was organized February 1, 1916, taking over the business of I. Unterberg & Co., a partnership. It acquired the assets and assumed the liabilities of the partnership. The net value of the assets was $436,655.71.

For the partnership assets the taxpayer issued to the three partners common stock of a par value of $200,000, and on May 1, 1916, three instruments of an aggregate face value of $236,655.71. The following is one of the instruments issued May 1, 1916:

NEW YORK, *May 1st, 1916.*

On May 1st, 1919, I. Unterberg & Co., Inc., for value received, promises to pay to Israel Unterberg or order One hunderd and fifty-one thousand six hundred thirty-eight 35/100 ($151,638.35) dollars, at No. 90 Franklin Street, in the City of New York, with interest thereon from February 1, 1916, at the rate of six per cent (6%) per annum, payable semiannually on the 1st days of May and November; with the privilege to said Company to pay the principal at any time after May 1st 1917, on giving thirty days notice by mail to the holder hereof.

This note is one of three similar notes, bearing like date, amounting in the aggregate to the sum of Two hundred and thirty-six thousand, six hundred and fifty-five 71/100 ($236,655.71) dollars, which have been issued by said Company, and are to stand on an equal basis as obligations, without preference or priority of one over another. All of said notes are issued on condition that they shall be subordinate to the claims of the general business creditors of said Company, and upon the liquidation or dissolution of said Company, or upon the final distribution of its assets, such general business creditors shall be entitled to priority of payment in full over said notes.

I. UNTERBERG & CO., INC.,
By HENRY C. TAYLOR, *President.*

$151,638.35.

Upon the original instrument were affixed documentary revenue stamps aggregating $30.34. Written across the face of the instrument was the following notation:

January 27, 1919.  Stock issued in payment of these notes.

DAVID N. UNTERBERG, *Secy.*

The following agreement was entered into between the three stockholders on April 17, 1916:

Agreement made on the seventeenth day of April, 1916 between William S. Slater and Israel L. Butler, of the City of New York, (being stockholders of I. Unterberg & Co., Inc., a corporation duly organized and existing under the laws of the State of New York), parties of the first part, and Israel Unterberg, of said City of New York, party of the second part, witnesseth:

Whereas, the parties of the first part are the owners respectively of the number of shares of the capital stock of the said Company, set opposite their signatures hereto, and are officers of said Company; and

Whereas, it is deemed for the interest of said Company and its stockholders that the stock held by the several parties of the first part shall not be transferred or held by any party who shall not be interested in the conduct of its business; and

Whereas, the party of the second part is the holder of a majority of said stock, and has heretofore caused to be transferred to said Company assets of a value substantially in excess of the stock issued by said Company therefor, by previous agreement with the several parties of the first part and which has enured to their benefit as such stockholders;

Now, therefore, in consideration of the premises and of one dollar by each of the parties to the other in hand paid, the receipt whereof is hereby acknowledged, it is hereby agreed as follows:

The parties of the first party do hereby severally agree that if either of the parties of the first part shall for any reason cease to be an officer of said Company after the 1st day of January 1918, or shall die, the party of the second part, his executors, administrators and assigns, shall have and is hereby given an option to purchase the stock of either of the parties of the first part, at the book value of said stock as determined by the Board of Directors of said Company; in computing such book value, it is understood and agreed that no value shall be estimated for the good will, trade names, trade marks, and other intangible assets; such option to be exercised as hereinafter provided.

It is understood and agreed that neither of the parties of the first part shall sell or transfer his stock in said Company, nor create or suffer to be created any lien, pledge or incumbrance of or upon said stock, or any part thereof within two years from the 1st day of January 1916. From and after the 1st day of January 1918, the party of the second part shall have and is hereby given several options to purchase the respective stock of the parties of the first part at any time thereafter at the book value of said stock as determined by the board of directors of said Company; in computing such book value, it is understood and agreed that no value shall be estimated for the good will, trade names, trade marks, and other intangible assets. It is also understood that said board of directors may, in the conduct of the business of said corporation, take inventory of merchandise, and make provision for discounts, bad debts, and other items, in such manner and form as has heretofore been adopted by the firm of I. Unterberg & Co. in its business.

It is understood and agreed that if said party of the second part shall exercise the aforesaid option to purchase the stock of either of the parties of the first part, said party of the second part shall at the same time purchase the debenture notes of said Company to be dated May 1st 1916, (being part of a series of similar notes amounting in the aggregate to $236,655.71), if any remain unpaid and are then owned by such parties of the first part.

It is also understood and agreed, that if after said 1st day of January 1918, said party of the second part, his executors, administrators or assigns, shall not within three months after a written demand from any of the parties of the first part, exercise the aforesaid option to purchase such stock at the price and on the terms aforesaid, then the parties of the first part shall severally have the right to sell or transfer their respective shares of stock to any other party or parties free from any of the obligations of this agreement.

This agreement shall apply to and cover any further shares of the said Company which the parties of the first part or any of them, shall hold or acquire by any increase in the capital stock of said Company, or otherwise, as well as to the shares now held by them.

It is also understood and agreed that this agreement shall be binding upon the parties hereto and upon their respective executors, administrators and assigns; and that the certificates of stock held by the parties of the first part respectively, and any certificates that may be substituted therefor, and any further certificates to be issued to them by said Company shall have endorsed thereon a statement to the effect that said certificates shall be and be deemed subject to the conditions of this agreement. And the parties of the first part severally agree that they will make no sale, transfer or pledge of said stock except subject to the option and rights herein given to said party of the second part.

In witness whereof, the parties hereto have hereunto affixed their hands and seals the day and year first above written.

WILLIAM S. SLATER    [L. S.]

ISRAEL L. BUTLER    [SEAL]

ISRAEL UNTERBERG    [SEAL]

In presence of

     BRISON HOWIE

         as to Israel L. Butler

         and Israel Unterberg.

The opening entry in the journal of the taxpayer is as follows:

I. Unterberg & Co. Incorporated under the laws of the State of New York. Capital stock $200,000, consisting of 2,000 shares of a par value of $100 each. Certificate of incorporation filed March 15, 1916.

*Sundries:*

| | Folio. | Dr. | Cr. |
|---|---|---|---|
| To Sundries— | | | |
|      Cash on hand | 25 | $28.74 | |
|      Cash in banks | 29 | 50,315.26 | |
|      Accounts receivable | 37 | 329,068.76 | |
|      Accounts receivable, special | 45 | 523.46 | |
| *Loans:* | | | |
|      J. Kamber | 46 | 10.00 | |
|      Clark Eddy Co | 47 | 1,000.00 | |
|      J. H. Steiner | 48 | 420.00 | |
|      Union Shirt Co | 49 | 50.00 | |
| *Salesmen's Traveling Expenses:* | | | |
|      I. L. Butler | 266 | 735.00 | |
|      E. G. Cohn | 266 | 414.92 | |
|      J. E. Mittenthal | 266 | 650.00 | |
|      Sundry | 266 | 125.00 | |

| *Factory Investments:* | Folio. | Dr. | Cr. |
|---|---|---|---|
| Leighton | 61 | $3, 794. 44 | |
| Gettysburg | 63 | 637. 15 | |
| York | 65 | 3, 734. 04 | |
| York Paper Box | 67 | 1, 702. 47 | |
| Merchandise Inventory | 221 | 173, 067. 45 | |
| Koty building | 69 | 4, 000. 00 | |
| Machinery & Fixtures | 79 | 7, 333. 84 | |
| Mileage | 81 | 9. 82 | |
| Accrued interest | 85 | 101. 95 | |
| Reserve for discount on purchases | 89 | 602. 79 | |
| Rent account—steam heat | 242 | 100. 00 | |
| York factory—telephone | 246 | 7. 84 | |
| Contractors | 221 | 9. 87 | |
| To Bills Payable | 5 | | $125, 000. 00 |
| Accounts payable | 11 | | 8, 404. 47 |
| Koty & Sons, expense | 71 | | 388. 50 |
| Contractors—labor due | 221 | | 1, 404. 33 |
| Contingent account | 17 | | 1, 947. 57 |
| Reserve for discount on sales | 93 | | 4, 642. 22 |
| Debenture notes | 3 | | 236, 655. 71 |
| Capital stock | 1 | | 200, 000. 00 |

For the transfer of all the rights, title, and interest in the above assets of I. Unterberg & Co., including the Good Will and name, for and in consideration of the issue of 2,000 shares of the capital stock, and the assumption by this company of the above liabilities, including three debenture notes, aggregating $236,655.71, due May 1st, 1919, interest at 6% per annum, from February 1st, 1916, as per resolution of Board of Directors dated March 15th and recorded in Minute Book, folio 20.

The Commissioner excluded from the taxpayer's invested capital for the year 1918 the face value of $236,655.71 of the three debenture notes, on the ground that they represented borrowed capital. As a result of this exclusion a deficiency was determined against the taxpayer in the amount of $9,226.52.

DECISION.

The determination of the Commissioner is approved.

OPINION.

STERNHAGEN: The taxpayer claims the right to include in its invested capital the full amount of $436,655.71 which it received at the time of its organization from the former partnership. There is no dispute that the net assets received were actually worth this amount, but the Commissioner has disallowed $236,655.71 because he regards it as borrowed capital.

The Revenue Act of 1918 defines invested capital in section 326 to include actual cash and tangible property paid in for stock or shares and paid-in or earned surplus. It expressly excludes borrowed capital, which in section 325 is defined as "money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise." If, therefore, the taxpayer is to succeed, the $236,655.71 must be shown to be within invested capital, i. e., paid in for stock

or shares or as paid-in surplus, and not borrowed capital to any extent. The plan of the statute was to assess profits beyond a prescribed return upon the capital risked in the enterprise. *La Belle Iron Works* v. *United States*, 256 U. S. 377. Since borrowed capital was not risked it was excluded from the base of the ratio. Profits derived from the use of other people's money were, except for the relief provided by the method set forth in sections 327 and 328, fully subject to the profits tax. This general purpose must be kept in mind in applying the statute according to its terms.

At the time of the organization of the corporation by the individuals who had theretofore carried on the business as a partnership, all of the net assets of $436,655.71 were turned in, and the consideration therefor was 2,000 shares of stock of a par value of $200,000 and the issuance to the same persons of the three obligations here in question aggregating $236,655.71. The fact, as it appears, that the latter were not issued until May is not material, because it is clear that the obligations were in fact incurred at the time of the transfer of the assets in February. The determining question is whether these three instruments are such as to constitute the property "bona fide paid in for stock or shares" or "borrowed capital."

The document has been set forth in the findings of fact. In the corporation's opening journal entry it is called a "debenture note"; on the face of the instrument it is called a note, and it bears the documentary internal revenue stamps proper for a note. In the stockholders' agreement it is called a debenture note. But none of these facts conclusively proves it to be a note if its terms give it a different character. Were it not for the last sentence, there could be little room for doubt that each of the three similar instruments was a promissory note of equal standing with the other two. It promises to pay a specified amount, with interest, to a definite person at a definite time. Then follows the restrictive condition that it is subordinate to the claims of general business creditors at maturity or on liquidation. This latter condition, the taxpayer contends, is such that it converts the instrument into preferred stock. The contention is that by subordinating the right of the holder to that of the general creditors the instrument represents property placed at the risk of the business and not property loaned to the corporation. In other words, the dominant feature is said to be the condition and the risk and not the promise to pay.

It can not be doubted that the nature of an instrument may, because of its terms and the circumstances of its issuance and subsistence, be held to be different from what it is denominated. The decisions are numerous in which the courts have held bonds to be

stock, *In re Fechheimer Fishel Co.*, 212 Fed. 357; *Cass* v. *Realty Securities Co.*, 148 App. Div. 96, 132 N. Y. Supp. 1074; have examined the circumstances carefully to determine whether the preferred stockholder was in truth a creditor, *Warren* v. *King*, 108 U. S. 389; *Hamlin* v. *Toledo, etc. R. R. Co.*, 78 Fed. 664; *Rider* v. *Delker & Sons Co.*, 145 Ky. 634, 140 S. W. 1011; have held that a tax on bonds was not applicable to certificates called preferred stock, *Miller* v. *Ratterman*, 47 Oh. St. 141, 24 N. E. 496; and that the rights of bondholders as general creditors could not be defeated by calling them stockholders because the instruments provided for sharing at maturity in the net profits, *In re Interborough Realty Co.*, 223 Fed. 646.

Examining the terms and effect of the instrument, we are unable to hold it to be a certificate of stock. It is evidence of a restricted indebtedness. The fact that the principal amount is subordinated to the claims of general business creditors is not sufficient to warrant this Board's determination that it is stock for the purpose of invested capital, when for all other purposes so far as we are advised the parties have treated it as a note. The interest is payable semi-annually in any event. Has it been paid, and has it been deducted as interest in computing taxable net income? Has the capital-stock-tax return included the amount of these instruments as the basis of tax? Have the amounts of these notes ever been subjected to any of the tests or vicissitudes of stock? The evidence does not inform us. We are not inclined therefore didactically to say that these are certificates of stock for tax purposes in the absence of convincing evidence that they are regarded as such for other purposes or convincing argument that they must be held to be such for all purposes notwithstanding the apparent intention of the interested parties to the contrary. As counsel for the taxpayer says, they cannot be both stock and notes, and having presumably given them full effect as notes during their life, we will not now say they were stock.

Applying the principle of invested capital, it is questionable whether these amounts were in fact risked in the enterprise. They were payable at maturity, subject to the claims of general creditors. They were an obligation of the corporation, enforcible in all respects except that the general creditors might insist that assets should not be impaired below the amount of their claims. They were of lower degree than such claims, and yet fixed in amount and time so as to distinguish them from stock. Indeed, it may be asked why, if after all they were stock, such care was used to limit the stock to $200,000 and issue notes for the rest? Apparently it may be inferred that the owners were willing to venture $200,000 in the business, but desired to be assured of the return of the $236,000 except in case

of failure within three years.  One was a business risk and the other a reasonably safe three-year investment.

The question here is in all essential respects similar to that presented in the *Appeal of A. H. Stange Co.*, 1 B. T. A. 58, and, as in that appeal, we hold the instruments in question to represent borrowed capital and hence that the amount thereof may not be included in invested capital.