In the Matter of ERNST SCHWARZ, Appellant, against GENERAL ANILINE & FILM CORPORATION, Respondent.

Argued March 4, 1953; reargued June 2, 1953; decided June 4, 1953.

*Rudolf B. Schlesinger, Joseph Kaskell* and *Beate Bloch* for appellant. I. The court has jurisdiction of the subject matter of the proceeding. (*Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541.) II. The petition states facts sufficient to constitute a cause of action for assessment of expenses under article 6-A of the General Corporation Law. (*Hudson* v. *United States,* 9 F. 2d 825, 272 U. S. 451; *State* v. *La Rose,* 71 N. H. 435; *United States* v. *Socony-Vacuum Oil Co.,* 23 F. Supp. 531; *United States* v. *Winslow,* 195 F. 578, 227 U. S. 202; *Dick Co.* v. *Marr,* 95 F.

Supp. 83; *Alden-Rochelle* v. *American Soc. of Composers, Authors & Publishers,* 3 F. R. D. 157; *Barnsdall Refining Corp.* v. *Birnamwood Oil Co.,* 32 F. Supp. 308; *Twin Ports Oil Co.* v. *Pure Oil Co.,* 26 F. Supp. 366; *United States* v. *Patten,* 226 U. S. 525; *United States* v. *Standard Oil Co.,* 23 F. Supp. 937.)

*Herbert L. Abrons, Donald O. Lincoln, Eugene L. Stewart* and *Kathryn V. Crean* for respondent. I. The court lacks jurisdiction of the subject matter of the proceeding. (*Abrams* v. *Allen,* 297 N. Y. 52; *Koral* v. *Savory, Inc.,* 276 N. Y. 215; *Isaac* v. *Marcus,* 258 N. Y. 257; *Continental Securities Co.* v. *Belmont,* 206 N. Y. 7; *Bosworth* v. *Allen,* 168 N. Y. 157; *Ansonia Brass & Copper Co.* v. *New Lamp-chimney Co.,* 53 N. Y. 123; *Matter of Kaplan* v. *Peyser,* 273 N. Y. 147; *City Bank Farmers Trust Co.* v. *Hewitt Realty Co.,* 257 N. Y. 62; *Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *New York Dock Co.* v. *McCollum,* 173 Misc. 106.) II. The petition is legally insufficient because it shows on its face that the conditions required by article 6-A of the General Corporation Law for reimbursement have not been satisfied. (*Simon* v. *Socony-Vacuum Oil Co.,* 179 Misc. 202; *Dornan* v. *Humphrey,* 278 App. Div. 1010; *United States* v. *Frankfort Distilleries,* 324 U. S. 293; *People* v. *Daiboch,* 265 N. Y. 125; *Spaulding* v. *Mutual Life Ins. Co. of N. Y.,* 96 Vt. 67; *United States* v. *Norris,* 281 U. S. 619; *Singleton* v. *Clemmer,* 166 F. 2d 963; *Harris* v. *United States,* 190 F. 2d 503; *Hudson* v. *United States,* 272 U. S. 451; *Fisher* v. *Schilder,* 131 F. 2d 522.) III. The petition does not state a cause of action. (*Twin Ports Oil Co.* v. *Pure Oil Co.,* 26 F. Supp. 366; *Barnsdall Refining Corp.* v. *Birnamwood Oil Co.,* 32 F. Supp. 308; *Commonwealth* v. *Ingersoll,* 145 Mass. 381; *Kravis* v. *Hock,* 136 N. J. L. 161; *Caminetti* v. *Imperial Mut. Life Ins. Co.,* 59 Cal. App. 2d 476; *Fidelity-Phenix Fire Ins. Co. of N. Y.* v. *Murphy,* 231 Ala. 680; *State ex rel. McElliott* v. *Fousek,* 81 Mont. 457; *Doughty* v. *De Amoreel,* 22 R. I. 158.).

DESMOND, J. This proceeding is brought under sections 64 to 68, found in article 6-A, as enacted in 1945 (L. 1945, ch. 869), of the General Corporation Law, which sections set up a system whereby the New York courts may, in certain situations, order that a corporation reimburse its officials for their previously

incurred litigation expenses. With section 63 of the same law we are not concerned here since that part of article 6-A has to do with reimbursements authorized by corporate charter or resolutions. The real question here is as to whether sections 64 to 68, hereinafter dealt with at greater length, cover the present case.

In the petition, which has been dismissed for insufficiency (and the allegations of which we accept as true), it is said, among other things, that in December, 1941, a Grand Jury in the United States District Court, Southern District of New York, indicted General Aniline & Film Corporation and other defendants, including petitioner Schwarz, individually, for alleged violations of the first section of the Sherman Anti-Trust Act (U. S. Code, tit. 15, § 1). Petitioner was at that time a vice-president and director of General Aniline & Film Corporation, but had resigned as officer and director, and retired, at the end of 1941, a few days after the indictment was handed up. The petition goes on to say that Schwarz was not guilty of any violation of the Sherman Act, that he pleaded not guilty to the indictment, and retained attorneys in New York City to whom he agreed to pay a fee of $7,500 to defend him up to but not including the trial if there should be one, these attorneys informing him at the time that, if the case should go to trial the fee for representing him at such a trial would be $1,000 per day; that Schwarz, from his own funds, paid these attorneys a retainer fee of $7,500 plus certain disbursements. The petition further says that, in January, 1950, petitioner's lawyers informed him that the United States was no longer interested in prosecuting the cause, but desired to terminate it and was willing, if the court would consent, to permit all the individual defendants, including Schwarz, to plead *nolo contendere* (see Federal Rules of Criminal Procedure, rule 11), that petitioner did not wish to do so, but that he was told by his attorneys that he would probably be punished by a small fine only, and that the expense of a trial of the case would be financially crushing to him. He alleges in this petition that, pursuaded by these arguments, he pleaded *nolo contendere,* was fined $500 by the court, paid the fine and requested General Aniline & Film Corporation to reimburse him but that the corporation notified him that it did not feel authorized to do so without an order of

the court. Thereupon, through new attorneys, petitioner applied to the United States District Court for an order directing reimbursement of these expenses, but that proceeding was dismissed on the ground that the Federal court had no power to enter such an order in the criminal cause, and that, therefore, petitioner's rights, if any, would, under section 65 (*supra*), have to be enforced in the State courts. Petitioner thereupon brought this present proceeding in Supreme Court, New York County. Respondent contended, at Special Term, that the proceeding did not lie, for two reasons: first, that the statutes were not intended by the Legislature to apply to expenses incurred in criminal proceedings, but only in stockholders' suits and similar civil causes; and, second, that even if they did apply, petitioner was barred from recovering by the language found at the end of section 64 (*supra*), which says that there shall be no such reimbursement in relation to matters as to which it shall have been adjudged, in the action, suit or proceeding in which the fees were incurred, that the official, director or employee is liable for " misconduct " in the performance of his duties. The Special Term opinion said, quoting *People* v. *Daiboch* (265 N. Y. 125, 128, 129), that, while a plea of *nolo contendere* is not an admission of guilt, it nonetheless is a conviction and has the same consequences, in the criminal cause in which it is entered, as a plea of guilty. The court called attention to section 5 of the Clayton Act (U. S. Code, tit. 15, § 16) to the effect that a judgment entered on a plea of *nolo contendere* in an antitrust prosecution is not to be treated as an admission in any other action. Nonetheless, the court thought that the imposition of a fine on petitioner amounted to an adjudication that he was liable for misconduct in the performance of his duties, and that, therefore, under the express language of section 64, he could not be awarded reimbursement.

On petitioner's appeal to the Appellate Division, the four Justices who voted for affirmance wrote no opinion, so that we do not know on which ground, or grounds, the majority based its approval of a dismissal of the petition. The dissenting Justice, in that court, was of the opinion that petitioner's conviction did not constitute an adjudication of " misconduct " within the meaning of section 64. He stated that no moral

turpitude had been shown in the criminal cause as to this petitioner, and that, accordingly, it would not be against public policy to permit reimbursement. He pointed out that the facts in the antitrust prosecution were not before the court in this petition, and so, he thought, the plea of *nolo contendere* did not necessarily show any '' misconduct '' as to the corporation, and indeed, might have covered conduct in promotion of the corporation's interests, and that the making of the plea by defendant might well have been a mere settlement in the antitrust suit, not involving any adjudication, or any misconduct at all. Despite the discussion in appellant's brief here as to the absence of moral turpitude in antitrust law crimes, it is the fact, and stated in the petition, that these attorneys' fees were spent by petitioner *in defending himself against an indictment for a violation of a Federal criminal statute,* that he put in a plea of *nolo contendere,* which is unknown except in criminal causes, and that he was ordered to, and did, pay a fine. Thus, whatever be his moral guilt or lack of it, he did incur these expenses while defending himself in a criminal prosecution.

Neither court below discussed the question as to whether article 6-A was intended to apply to expenses incurred by an officer or director in his defense against a criminal indictment. For ourselves, however, we cannot believe that the Legislature, in enacting article 6-A, ever intended to provide reimbursement to anyone for his attorneys' fees in a criminal cause against himself. As we know, these provisions for reimbursement came into the statute law after, and because of, the famous opinion of Judge CROUCH, sitting as an Official Referee, in 1939, in *New York Dock Co.* v. *McCollum* (173 Misc. 106). (See *Bailey* v. *Bush Term. Co.,* 293 N. Y. 735.) There it had been decided, in effect, that the corporation in whose behalf a stockholder's suit is brought, was not obligated, at common law, to pay legal fees incurred by its directors in defending themselves as individual defendants in such an action. That left corporate directors (and officers) in an unsatisfactory position since, when sued and although successful in a stockholder's suit, they would find themselves exonerated from fault but subject to the heavy attorneys' fees characteristic of the defense of such actions. To ameliorate their condition, article 6-A was put into the General

Corporation Law, and it is noteworthy that it follows after, and is an obvious supplement to, article 6 of that law. Article 6, in its sections 60 and 61, describes certain civil actions which may be brought by or on behalf of a corporation against its officers or agents for misconduct toward the corporation. Sections 27-a and 61-a of the General Corporation Law were passed in 1941 (L. 1941, chs. 209, 350) to overcome the effect of the *New York Dock Co.* case (*supra*), as to fees of corporate officials, sued in such cases. Those two sections provided, respectively, for indemnity either by provision therefor in a certificate of incorporation or by-laws (§ 27-a), or for an award by the court of such litigation expenses as special costs (§ 61-a). Neither of those 1941 enactments had any discernible relation to a *criminal* case. Obviously, the Legislature was talking about the financial difficulties that had befallen certain corporate directors, officers and agents when they were sued, individually, in stockholders' suits, and had to pay their own lawyers.

Section 27-a (*supra*) was quite restricted in that it had to do with repayment of litigation expenses, when permitted by certificate of incorporation or by-laws of a corporation only. Section 61-a (*supra*) contained another kind of limitation — or, at least, another kind of limitation was read into it by the courts — the courts holding that litigation expenses could not be assessed as special costs against a corporation in favor of its officers or directors, unless there was a showing that the corporation itself benefited by the defense of the individuals to the suit. In 1945, pursuant to recommendations by the Law Revision Commission, section 27-a became section 63 in a new article 6-A, and the remaining sections of article 6-A (§§ 64, 65, 66, 67, 68) were added. Sections 65, 66, 67 and 68 describe procedure only, whereas section 64, as pointed out above, contains broadened provisions for assessment against a corporation, of the expenses of any person who is made a party to " any action, suit or proceeding " because of his being an officer, director or employee, unless it shall have been adjudged that he was liable for neglect or misconduct in the performance of his duties. While it cannot, of course, be proven mathematically, it seems clear that there never was any intention to apply any of this to defense costs in a criminal case. There

just is no evidence whatever that the Legislature was talking about criminal cases. Appellant gets some comfort from a brief, equivocal footnote in a study, made by an attorney employed by the Law Revision Commission, and attached to the 1945 Report of the Law Revision Commission. The writer of that study said in the footnote that it had been urged that the language of section 64 ('' any action, suit or proceeding '') might cover a criminal proceeding for violation of the antitrust law. But that was a mere comment by the writer of a study made for the commission, referring to a contention made, or which might be made, by somebody else that the section might be applicable in a criminal cause. There is nothing to indicate that the Legislature, or, indeed, the Law Revision Commission, ever had any such thing in mind.

It would be a very strange public policy, indeed, which would set up legal machinery whereby one charged with, or convicted of, a crime, of whatever kind, could require the corporation by whom he was employed to pay his legal expenses. And, aside from that aid to statutory construction, there are plenty of affirmative indications that the Legislature was thinking of, and legislating about, civil causes only. The Law Revision Commission's report, with which the 1945 statutes originated, made it plain (see bottom p. 139) that the proposed 1945 revision (new article 6-A of the General Corporation Law) had for its purpose the '' making consistent '' of former sections 27-a and 61-a (*supra*) and setting up better machinery for enforcing (where charter and by-laws did not authorize) reimbursement by a corporation of litigation expenses of its directors and officers. No one ever suggested that former sections 27-a and 61-a had anything to do with criminal cases. At pages 140 and 141, the commission's 1945 report is talking, obviously, about allowances and attorney's fees and costs of parties in civil proceedings. Of the numerous decisions and writings cited in that report, not one had to do with a criminal case.

When the Legislature came to enact, into law, the 1945 suggestions of the commission, it included them in the very same chapter (L. 1945, ch. 869) which contained the new statutes requiring security from certain plaintiffs in stockholders' suits. In other words, the Legislature considered that articles 6 and 6-A

of the General Corporation Law, as revised, were *in pari materia* and that everything in both articles referred to civil litigation. Indeed, our court, in another connection, has written (*Lapchak v. Baker,* 298 N. Y. 89, 93) that section 61-b (the security for costs statute in article 6) is "to be read in connection with article 6-A" (with which we are immediately concerned here). Other reliable material is available to show that the whole of both articles 6 and 6-A, represented legislative and professional thinking as to stockholders' suits, with no connection, however remote, with criminal prosecutions (see Stockholders' Derivative Suits, by Franklin S. Wood, pp. 21, 84–85, 88; 16 New York State Bar Assn. Bulletin, p. 91; 17 New York State Bar Assn. Bulletin, p. 114).

It is suggested that criminal proceedings are covered by the inclusive language of section 64: "any action, suit or proceeding". Those words could, we suppose, carry that meaning, if they stood alone, and if we had no sure guides to their real significance. That identical phrase was in old sections 27-a and 61-a, and it was never asserted that those statutes applied to criminal cases — indeed, old section 61-a itself provided that the litigation expenses it described could be recovered as "special costs", plainly a reference to civil litigation. We note, too, that the quite similar New Jersey, Kentucky and Delaware statutes set out in an appendix to the Law Revision Commission's 1945 Report, all include the same verbiage: "action, suit or proceeding", and it is not claimed that any of those statutes have ever been held to contemplate the reimbursement of lawyer's fees in criminal trials. Our own conclusion is that the draftsman who was responsible for the statutory language: "any action, suit or proceeding" was being over-cautious in making sure that the law would apply in an "action" at law, a "suit" in equity, or a special "proceeding".

Since we are holding that court-mandated reimbursement, under article 6-A, can never be had as to expenses of one defending himself against criminal charges, it is unnecessary to examine the interesting question of whether a plea of "*nolo contendere*" in a Federal court is an "adjudication" of "misconduct". It is instructive, however, to look a little closer

at the exception found at the end of section 64, which denies reimbursement to a corporation official who has been adjudged to be " liable for negligence or misconduct in the performance of his duties." We think " negligence or misconduct ", as there used, refers right back to sections 60 and 61, setting up civil actions by or on behalf of corporations against their officers or directors who have injured the corporations by wrongdoing or inattention to duty.

Those who join in this opinion agree, also, with the able concurring opinion of CARSWELL, J., who sat with us in the rehearing of this appeal.

The order should be affirmed, with costs.

CARSWELL, J.* (concurring). I concur in Judge DESMOND's opinion for affirmance for the reasons given therein and for an additional reason.

Section 64 of the General Corporation Law directs reimbursement by a corporation of a director, officer or employee who has been put to expense as a consequence of having been made a party " to any action," etc., because he is or was a director, except when guilty of misconduct. This opening phrasing properly becomes the subject matter of interpretation only because certain terminology in section 64 and the following sections, characteristic of and conventionally used in civil actions, makes the meaning of the opening phrase obscure or equivocal or has a possibly restrictive effect upon it. It thus becomes necessary to determine by interpretation whether " any action," etc., includes both civil or criminal actions or is limited to a civil action. This requires us to ascertain whether the proper rule of interpretation is strict construction or liberal construction, in order to determine whether or to what extent the light shed by the context, on the words " any action," etc., reveals the true legislative purpose or intent, having in mind that the pertinent sections were all the subject of a single legislative document and enactment in chapter 869 of the Laws of 1945.

Reimbursement for such expenses could not be had at common law (*Bailey* v. *Bush Term. Co.*, 293 N. Y. 735). Therefore, sections 64 and 65 are in derogation of the common law. Section

---
* CARSWELL, J., designated for the purposes of this case.

63 provides two methods of reimbursement (a) by a provision in the certificate of incorporation; and (b) by a provision in the by-laws or a resolution of the stockholders. This is a regulation of the exercise of a common-law right of freedom of contract and is merely declaratory thereof. In the instant case, there is no provision in a certificate and no by-law or resolution authorizing such reimbursement. The parties have refrained or deliberately refused to make such authorization, although free to do so and to include specifically not only civil but criminal actions.

Section 64, therefore, is in derogation of both the common law and the contract rights or engagements of the parties. Strict construction, therefore, is the rule applicable (*Matter of Ryan,* 291 N. Y. 376, 400; *Erickson* v. *Macy,* 231 N. Y. 86, 91; *Dean* v. *Metropolitan Elevated Ry. Co.,* 119 N. Y. 540, 547). Only by observing such a rule is the extension or broadening of a legislative change avoided and true legislative intent made effective.

Section 65 which is referred to in section 64 sheds light on the true scope of section 64. It provides in subdivision (a) that the reimbursement is to be sought in the " action," etc., in which the expenses were incurred or (b) in a separate proceeding in the Supreme Court. Subdivision (a) is the only one that specifies in detail what expenses are to be the subject of reimbursement. Applying the rule of strict construction here to ascertain legislative intent, subdivision (a) is the sole determinant of the extent of the reimbursement and if reimbursement cannot be had in subdivision (a) it may not be had in subdivision (b). If subdivision (a) is to be construed as inclusive of both a basic civil action and a basic criminal action, then subdivision (a) is valid as to a civil action but invalid as to a criminal action. The Legislature is without power to bestow jurisdiction in civil matters on a court which by constitutional provision is " vested with jurisdiction only in criminal prosecutions or proceedings " (N. Y. Const., art. VI, § 11). A typical example is the County Courts of Kings, Bronx, Queens and Richmond Counties. A director acquitted in a criminal action under the Donnelly Act, for instance, may not have reimbursement for expenses under subdivision (a) of section 65 under the

principle just stated (*People ex rel. Clark* v. *Adel,* 129 Misc. 82, 87, 90). If a statute is subject to two interpretations, one valid and the other invalid, the valid interpretation must be adopted (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 141, pp. 210, 211; § 150, pp. 236, 237; *Dollar Co.* v. *Canadian Car & Foundry Co.,* 220 N. Y. 270; *Matthews* v. *Matthews,* 240 N. Y. 28; *People* v. *Mancuso,* 255 N. Y. 463).

A judicial determination between two who were defendants in a criminal action as to the respective rights and obligations of one to the other based *inter alia* upon presence or absence of fault is a jural question that is indisputably an exercise of civil jurisdiction. (Cf. *Bailey* v. *Bush Term. Co., supra.*)

Section 65, the complement of section 64, being thus limited to a basic civil action or proceeding, the legislative intention, therefore, clearly was to limit similarly section 64 to a civil action or proceeding. This is the inevitable consequence of the impact of context. If the legislative intention was to include a criminal action, under the rule of strict construction, a clear direction or an imperative command to include a criminal action must be given by the Legislature. To adopt the appellant's construction would require that the effect of the impact of the context be dispelled by inserting before the word " action " in the opening phrase in section 64 the words " civil or criminal " and would require a recasting of section 65 so as to specifically direct in subdivision (a) that reimbursement be had in the basic civil action and in the event the expenses were incurred in a criminal action provide for an explicit direction in subdivision (b) that such expenses be sought in a separate proceeding in the Supreme Court.

To accept appellant's interpretation would be an unwarranted exercise by the court of the legislative function and give effect to an intent never expressed by the Legislature, under the guise of interpretation, and would be in derogation both of the common law and the contract engagements of the parties made available to them by methods set out in section 63.

The foregoing analysis of sections 63, 64 and 65 discloses that the legislative intent, as expressed throughout chapter 869 of the Laws of 1945, is to confine reimbursement in proper situations to expenses incurred in a civil action or proceeding.

FULD, J. (dissenting). I cannot agree that the lone circumstance that petitioner's legal expenses were incurred in defending a criminal, rather than a civil, antitrust proceeding removes his claim from the compass of section 64 of the General Corporation Law. Both the language and the design of that statute point the conclusion — apparently adopted by all the judges who passed upon the case below — that that factor does not, in and of itself, constitute a bar to reimbursement.

Nor do I believe that such recompense is proscribed on the further ground — not considered by the court (opinion of DESMOND, J., pp. 403–404) — that the judgment entered upon petitioner's plea of *nolo contendere* constitutes, in the language of section 64, an adjudication that he is "liable for negligence or misconduct in the performance of his duties" as an official of the corporation. Especially so, where, as here, petitioner was made a party defendant to the antitrust suit in his "capacity" as officer and director of a corporate defendant, with which he had not the slightest connection until some six years after the allegedly illegal agreement was concluded and the unlawful conspiracy begun.

Section 64 of the General Corporation Law, upon which decision depends, reads as follows:

> "Any person made a party to *any action, suit or proceeding* by reason of the fact that he  *  *  *  is or was a director, officer or employee of a corporation shall be entitled to have his reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense of such action, suit or proceeding  *  *  *  assessed against the corporation  *  *  *  except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties." (Emphasis supplied.)

That provision is bare of any limitation restricting its scope or application to civil cases. In point of fact, the legislature adopted language as broad and as all-inclusive as was possible. The statute encompasses "any action, suit or proceeding", and, in so many words, entitles any person made a party to reimbursement for attorneys' fees incurred in connection with

the defense " of such action, suit or proceeding." Lacking is any intimation, much less any verbiage, that such reimbursement was to be restricted to a particular kind of an action. And my conclusion that the statute means what it says — that the phrase " any action, suit or proceeding " is not limited to civil proceedings — is borne out by its history.

Before 1945, when Article 6-A, with its section 64, was added to the General Corporation Law, section 27-a empowered a corporation to provide in its certificate of incorporation or its by-laws that each director should be indemnified against expenses incurred in connection with the defense of " any action, suit or proceeding " in which he was made a party by reason of his having been a director. Section 61-a, though broader in its coverage (applying to officers as well as directors) was expressly limited to " any action, suit or proceeding " against such officers or directors " *brought by the corporation, or brought in its behalf* ". Here, then, was language to be used if the legislature desired to provide reimbursement *only* in a limited type of case. No such verbiage — indeed, no limiting language whatsoever — was employed when the legislature enacted section 64. Instead, as already indicated, it provided that reimbursement could be had by any person made a party " to any action, suit or proceeding " by reason of his being a corporate officer or director. In other words, while, before 1945, only expenses in actions " brought by the corporation, or brought in its behalf ", were mandatorily reimbursable, new section 64, in sharp contrast, called for reimbursement in " any action, suit or proceeding ". Rejection of the narrow language of former section 61-a, and adoption in its place of the exceedingly broad phrasing of section 64, bespeaks a design completely at odds with the restriction now imposed by the court.

Indeed, the Law Revision Commission, the very body responsible for the enactment of Article 6-A, suggested a special proceeding for collecting fees expended in defending a " criminal " antitrust suit (1945 Report of N. Y. Law Revision Commission [N. Y. Legis. Doc., 1945, No. 65], at p. 161, fn. 36). Thus, in the study submitted by the commission to the legislature, there is a discussion of the " type of action covered " by the proposed article. After calling attention to the broad language of old

section 27-a, to be imported into new sections 63 and 64, the writer expressly declared that such phrasing

" might cover certain types of actions [fn. 36, *E.g., a criminal proceeding against the corporation and its officers or directors for violation of the anti-trust laws*] in which the court, lacking powers of a court of equity, would not be in a position to pass upon the right to indemnity or to make allowances."

This contingency, the study continued, " can be avoided " by providing for " the maintenance of a special proceeding against the corporation for the sole purpose of determining these questions " (1945 Report of N. Y. Law Revision Commission, *op. cit.,* p. 161.) Adopting that proposal, the legislature made provision in subdivision (b) of section 65 for the suggested special "separate proceeding." This, I suggest, was the clearest indication possible that Article 6-A was meant to entitle officers and directors to reimbursement for expenses incurred in defending a criminal antitrust proceeding.

To the point, made in Judge DESMOND's opinion (p. 402), that it would be a " strange public policy " to set up legal machinery by which a person, charged with a crime, " could require the corporation by whom he was employed to pay his legal expenses ", several answers are at hand. There is nothing either " strange " or against " public policy " in reimbursing a corporate official for the expenses of defending an action brought against him solely because of his acts on behalf of the corporation which he, in good faith, believed would further its best interests. The legislature, having in mind the realities of business life, may well have concluded that the risk of an official's indictment under the antitrust laws is no more than a normal hazard of corporate operation, a risk of doing business to be borne by the company which, in all probability, profited from his activities. In point of fact, as Justice CARSWELL himself notes in his concurring opinion (p. 405), a corporation would be " free ", under the procedure embodied in section 63, to indemnify an officer or director against reasonable expenses incurred by him in defending "not only civil but criminal actions." And, even apart from section 63, it has been held that a corporation is empowered to pay attorneys' fees and other legal expenses incurred by a director in defending a criminal

antitrust suit, even though he was actually convicted. (See *Simon* v. *Socony-Vacuum Oil Co.*, 267 App. Div. 890, affg. 179 Misc. 202, 203–206.) Since, then, there is court sanction for reimbursing a corporate official for expenses incurred in defending a criminal antitrust proceeding, it is difficult to perceive any basis for declaring that section 64, if construed to effect that very same result by a somewhat different procedure, would offend against public policy.

And what of the official or director who, following indictment and trial, is actually *acquitted*? Certainly, no reason of policy may be advanced for denying him reimbursement for attorneys' fees in defending the suit. His only fault was that he was an official of a corporation whom the government chose to indict for a violation of the antitrust laws. Nevertheless, according to the court, even such an official — his complete innocence established and the indictment against him dismissed — would be barred from obtaining reimbursement under section 64. Mere statement of such a consequence compels rejection of the underlying rationale.

The basic flaw in the majority's reasoning, it seems to me, stems from a faulty assumption of an essential difference between the criminal and the civil in the area of antitrust regulation. As a general rule, it is of course true, a criminal proceeding is aimed at redressing a wrong to the public, while a civil suit brought by a private citizen seeks to vindicate only a personal right. Moreover, the difference between the two usually reflects a corresponding difference in the degree of dereliction charged or the importance of the duty violated. In the area of antitrust or, for that matter, of most economic regulation, however, both civil and criminal proceedings involve assertion of a public right and protection of a social interest. As a result, there appears little justification for sanctioning reimbursement of expenses in a civil antitrust case and refusing like recovery following a criminal antitrust proceeding — particularly since the choice of procedure under the statute is left completely with the Attorney General (see U. S. Code, tit. 15, §§ 1, 4, 24) and there is no suggestion that exercise of his discretion is to be governed by the enormity of the violation charged. Under those circumstances, the right to recovery of expenses should

not, I venture, depend on the happenstance of whether the asserted antitrust violation is attacked by criminal indictment or civil complaint.

In either case, it appears clear that the legislature intended that an officer or director should recover his reasonable defense expenses under section 64. The fact undoubtedly is, as Judge DESMOND states (opinion, pp. 402–403), that abuses attending the prosecution of stockholders' derivative suits prompted enactment of Article 6-A. However, a statute's reach is not to be measured *solely* by the evil that occasioned its birth. (See, e.g., *Fasulo* v. *United States,* 272 U. S. 620, 627; see, also, Crawford, Statutory Construction [1940], pp. 247–248.) And, as I have tried to show, both the language chosen and the procedures adopted in Article 6-A manifest the design that reasonable expenses incurred in defending an antitrust suit are recoverable — provided, of course, that the petitioning officer or director has not been '' adjudged　＊　＊　＊　liable for negligence or misconduct in the performance of his duties.''

The judgment entered upon petitioner's plea of *nolo contendere* does not, in my view, adjudge him so liable. Far from being an acknowledgment of guilt or an admission of misconduct, that plea '' is in the nature of a compromise between the Government and the defendants '', a device, so to speak, by which the proceeding may be settled with the approval of the court. (*Twin Ports Oil Co.* v. *Pure Oil Co.,* 26 F. Supp. 366, 372; see, also, *State* v. *La Rose,* 71 N. H. 435.) And the New Hampshire Supreme Court has written, '' Under the plea of *nolo,* the defendant does not confess or acknowledge the charge against him as upon a plea of guilty　＊　＊　＊. The plea is in the nature of a compromise between the state and the defendant — a matter not of right, but of favor. Various reasons may exist why a defendant conscious of innocence may be willing to forego his right to make defence if he can be permitted to do so without acknowledging his guilt.'' (*State* v. *La Rose, supra,* 71 N. H. 435, 438–439.) Indeed, in *People* v. *Daiboch,* 265 N. Y. 125, we actually recognized that a plea of *nolo contendere* or, more precisely, its equivalent, a plea of *non vult,* does not constitute a concession of any fact set out in the indictment. Although the court there held that it

is a conviction of a crime, under section 1941 of the Penal Law, for purposes of second offender treatment, the opinion explicitly and carefully pointed out that that plea " cannot be used or taken as an admission of the facts alleged in the indictment " (265 N. Y., at p. 129). While the judgment entered upon *nolo contendere* may, therefore, be regarded as a conviction under certain statutes applying to multiple offenses, such a judgment has never been considered an adjudication of guilt or even an admission of any fact contained in the indictment. (See, also, *Twin Ports Oil Co.* v. *Pure Oil Co., supra,* 26 F. Supp. 366, 376.)

Any doubt that a judgment entered upon a *nolo contendere* plea is in the nature of a compromise, a settlement of the controversy, rather than an adjudication of any fact asserted or a determination of any charge alleged, is laid to rest by a Clayton Act provision (38 U. S. Stat. 731, U. S. Code, tit. 15, § 16), distinguishing between a judgment of conviction following a trial and one entered after a plea of *nolo*. " A *final* judgment or decree rendered in any criminal prosecution " brought by the United States under the antitrust laws, the statute recites, " shall be prima facie evidence against such defendant in any suit or proceeding brought by any party against such defendant ". However, the statute goes on expressly to exclude from its application " consent judgments or decrees entered *before* any testimony has been taken ", and the term, " consent judgments or decrees ", has been held to include a decree entered after a plea of *nolo contendere*. (See, e.g., *Twin Ports Oil Co.* v. *Pure Oil Co., supra,* 26 F. Supp. 366, 371–372; *Barnsdall Refining Corp.* v. *Birnamwood Oil Co.,* 32 F. Supp. 308, 311–312.)

Beyond that, however — and I go further than is necessary for decision in this case — even if I were to assume that a plea of *nolo contendere* is an acknowledgment of guilt, it still would not follow that the judgment entered upon such a plea amounts to an adjudication that petitioner was " liable for negligence or misconduct in the performance of his duties." That exception obviously exempts a corporation from the duty to reimburse its officials only when they have been disloyal, or breached some obligation, to the corporation itself. It has no application when, in the faithful discharge of corporate duties and in the furtherance of what are regarded as the company's best interests, an officer or director may incidentally have committed acts involv-

ing him in a criminal antitrust proceeding. In short, if an official has exercised " the same degree of care and prudence that men prompted by self-interest generally exercise in their own affairs " (*Kavanaugh* v. *Commonwealth Trust Co.,* 223 N. Y. 103, 105; see, also, *General Rubber Co.* v. *Benedict,* 215 N. Y. 18), he should not be deemed guilty of " negligence or misconduct in the performance of his duties ", within the sense of section 64, even though his actions on behalf of the corporation result in his being adjudged guilty under the antitrust laws. (See *Simon* v. *Socony-Vacuum Oil Co., supra,* 179 Misc. 202, 203–205, affd. 267 App. Div. 890; 3 Fletcher's Cyclopedia Corporations [Perm. ed.], § 1039; cf. *Cass* v. *Realty Securities Co.,* 206 N. Y. 649, affg. 148 App. Div. 96, 99; *Seymour* v. *Spring Forest Cemetery Assn.,* 157 N. Y. 697, affg. 4 App. Div. 359, 376–377.)

The circumstance of such an adjudication does not suggest any disloyalty to corporate interests or even imprudence in the conduct of business affairs. " In view of the extreme uncertainty which prevails as a result of   *   *   *   vague and conflicting adjudications ", two authorities on the subject have written, " it is impossible for a lawyer to determine what business conduct will be pronounced lawful or unlawful by the courts.   *   *   *   Legitimate business enterprise, desirous of knowing and obeying the law, has no safe standards by which to be guided." (Jackson and Dumbauld, Monopolies and the Courts, 86 U. of Pa. L. Rev. 231, 232, 236; see, also, Cahill, Must We Brand American Business as Criminal?, Amer. Bar Assn., Proceeding of Section of Antitrust Law [1952], 26, 29–31.) And in the *Socony-Vacuum Oil Co.* case (*supra,* 267 App. Div. 890, affg. 179 Misc. 202), the court ruled that directors may not be held personally liable to stockholders for expending corporate funds on behalf of themselves in connection with their defense of a criminal antitrust suit, *even though they were convicted after trial.* While observing that those officials had participated in the unlawful acts leading to their prosecution and conviction, the court declared (179 Misc., at p. 203) that the evidence indicated that they " did not violate any duty which they owed the corporation; that they acted honestly and reasonably and for what they believed to be the best interests of the company."

The order of the Appellate Division should be reversed.

DYE and FROESSEL, JJ., concur with DESMOND, J.; CARS-WELL, J.,* concurs in separate opinion; FULD, J., dissents in opinion in which LEWIS, Ch. J., and CONWAY, J., concur.

. Order affirmed.

---

* Designated pursuant to section 5 of article VI of the State Constitution in place of Van Voorhis, J., disqualified.