Desmond, J.
(concurring in part and dissenting in part). I agree that the judgment of conviction cannot stand hut I think the indictment should he dismissed because it alleges no crime. Defendant’s demurrer should have been sustained.
The indictment charges that defendant knowing that £ £ he was subject to epileptic attacks or other disorder rendering him likely to lose consciousness ” suffered ££ an attack and loss of consciousness which caused the said automobile operated by the said defendant to travel at a fast and reckless rate of speed ” and to jump a curb and run onto the sidewalk “ thereby striking and causing the death ” of 4 children. Horrible as this occurrence was and whatever necessity it may show for new licensing and driving laws, nevertheless this indictment charges no crime known to the New York statutes. Our duty is to dismiss it.
Section 1053-a of the Penal Law describes the crime of “ criminal negligence in the operation of a vehicle resulting in death ’ ’. Declared to be guilty of that crime is ££ A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed ’ ’. The essentials of the crime are, therefore, first, vehicle operation in a culpably negligent manner, and, second, the resulting death of a person. This indictment asserts that defendant violated section 1053-a, but it then proceeds in the language quoted in the next-above paragraph of this opinion to describe the way in which defendant is supposed to have offended against that statute. That descriptive matter (an inseparable and controlling ingredient of the indictment, Code Crim. Pro., §§ 275, 276; People v. Dumar, 106 N. Y. 502) shows that defendant did not violate section 1053-a. No operation of an automobile in a reckless manner is charged against defendant. The excessive speed of the car and its jumping the curb were ££ caused ”, says the indictment itself, by defendant’s prior ££ attack and loss of consciousness ”. Therefore, what defendant is accused of is not reckless or culpably negligent driving, which necessarily connotes and involves consciousness and volition. The fatal assault by this car was after and because of defendant’s failure of consciousness. To say that one drove a car in a reckless manner in that his unconscious condition caused the car to travel recklessly is to make two mutually contradictory assertions. One cannot be ££ reckless ” while unconscious. One cannot while unconscious *147 “ operate ” a car in a culpably negligent manner or in any other ‘ ‘ manner ’ The statute makes criminal a particular kind of knowing, voluntary, immediate operation. It does not touch at all the involuntary presence of an unconscious person at the wheel of an uncontrolled vehicle. To negative the possibility of applying section 1053-a to these alleged facts we do not even have to resort to the rule that all criminal statutes are closely and strictly construed in favor of the citizen and that no act or omission is criminal unless specifically and in terms so labeled by a clearly worded statute (People v. Benc, 288 N. Y. 318, 323, and cases cited).
Tested by its history section 1053-a has the same meaning: penalization of conscious operation of a vehicle in a culpably negligent manner. It is significant that until this case (and the Eckert case, 2 N Y 2d 126, handed down herewith) no attempt was ever made to penalize, either under section 1053-a or as manslaughter, the wrong done by one whose foreseeable blackout while driving had consequences fatal to another person.
The purpose of and occasion for the enactment of section 1053-a is well known (see Governor’s Bill Jacket on L. 1936, ch. 733). It was passed to give a new label to, and to fix a lesser punishment for, the culpably negligent automobile driving which had formerly been prosecuted under section 1052 of the Penal Law defining manslaughter in the second degree. It had been found difficult to get manslaughter convictions against death-dealing motorists. But neither of the two statutes has ever been thought until now to make it a crime to drive a car when one is subject to attacks or seizures such as are incident to certain forms and levels of epilepsy and other diseases and conditions.
Now let us test by its consequences this new construction of section 1053-a. Numerous are the diseases and other conditions of a human being which make it possible or even likely that the afflicted person will lose control of his automobile. Epilepsy, coronary involvements, circulatory diseases, nephritis, uremic poisoning, diabetes, Meniere’s syndrome, a tendency to fits of sneezing, locking of the knee, muscular contractions — any of these common conditions may cause loss of control of a vehicle for a period long enough to cause a fatal accident. An automobile traveling at only 30 miles an hour goes 44 feet in a second. Just what is the court holding here? No less than *148 this: that a driver whose brief blackout lets his car run amuck and kill another has killed that other by reckless driving. But any such “ recklessness ” consists necessarily not of the erratic behavior of the automobile while its driver is unconscious, but of his driving at all when he knew he was subject to such attacks. Thus, it must be that such a blackout-prone driver is guilty of reckless driving (Yehicle and Traffic Law, § 58) whenever and as soon as he steps into the driver’s seat of a vehicle. Every time he drives, accident or no accident, he is subject to criminal prosecution for reckless driving or to revocation of his operator’s license (Yehicle and Traffic Law, § 71, subd. 3). And how many of this State’s 5,000,000 licensed operators are subject to such penalties for merely driving the cars they are licensed to drive? No one knows how many citizens or how many or what kind of physical conditions will be gathered in under this practically limitless coverage of section 1053-a of the Penal Law and section 58 and subdivision 3 of section 71 of the Yehicle and Traffic Law. It is no answer that prosecutors and juries will be reasonable or compassionate. A criminal statute whose reach is so unpredictable violates constitutional rights, as we shall now show.
When section 1053-a was new it was assailed as unconstitutional on the ground that the language “ operates or drives any vehicle of any kind in a reckless or culpably negligent manner ” was too indefinite since a driver could only guess as to what acts or omissions were meant. Constitutionality was upheld in People v. Gardner (255 App. Div. 683). The then Justice Lewis, later of this court, wrote in People v. Gardner that the statutory language was sufficiently explicit since “ reckless driving ” and “ culpable negligence ” had been judicially defined in manslaughter cases as meaning the operation of an automobile in such a way as to show a disregard of the consequences (see People v. Angelo, 246 N. Y. 451). The manner in which a car is driven may be investigated by a jury, grand or trial, to see whether the manner was such as to show a reckless disregard of consequences. But giving section 1053-a the new meaning assigned to it permits punishment of one who did not drive in any forbidden manner but should not have driven at all, according to the present theory. No motorist suffering from any serious malady or infirmity can with *149 impunity drive any automobile at any time or place, since no one can know what physical conditions make it “ reckless ” or “ culpably negligent ” to drive an automobile. Such a construction of a criminal statute offends against due process and against justice and fairness. The courts are bound to reject such conclusions when, as here, it is clearly possible to ascribe a different but reasonable meaning (People v. Ryan, 274 N. Y. 149, 152; Matter of Schwarz v. General Aniline & Film Corp., 305 N. Y. 395, 406, and cases cited).
A whole new approach may be necessary to the problem of issuing or refusing drivers’ licenses to epileptics and persons similarly afflicted (see Barrow and Fabing on Epilepsy and the Law, ch. IV; Restricted Drivers’ Licenses to Controlled Epileptics, and see 2 U. C. L. A. L. Rev., p. 500 et seq.). But the absence of adequate licensing controls cannot in law or in justice be supplied by criminal prosecutions of drivers who have violated neither the language nor the intendment of any criminal law.
Entirely without pertinence here is any consideration of driving while intoxicated or while sleepy, since those are conditions presently known to the driver, not mere future possibilities or probabilities.
The demurrer should be sustained and the indictment dismissed.
Conway, Ch. J., Dye and Burke, JJ., concur with Froessel, J., Desmond J., concurs in part and dissents in part in an opinion in which Fuld and Van Voorhis, JJ., concur.
Order affirmed.