THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* URAN MINING CORPORATION, Respondent, and WILLIAM G. COLBY. Appellant, et al., Defendants. In the Matter of WILLIAM G. COLBY, Petitioner.

Fourth Department, June 28, 1961.

*Francis L. Claus* and *Bernard Schuster* for appellant.

*Louis Lefkowitz, Attorney-General,* for the People, respondent.

*Houghton, Pappas & Le Pire* (*Jordan E. Pappas* of counsel), for Uran Mining Corporation, respondent.

WILLIAMS, P. J. The petitioner Colby appeals from an order denying his application for the payment of the expenses of counsel fees incurred in defending an action brought by the People of the State of New York against Uran Mining Corporation, Colby and others. His application is made under and pursuant to section 64 of the General Corporation Law.

The action to which he was made a party was instituted under article 23-A of the General Business Law (commonly known as the Martin Act) to enjoin Uran Mining Corporation (hereinafter called Uran), petitioner and others from continuing certain fraudulent practices. The practices sought to be enjoined included stock promotion generally; the use of corporate funds to promote the sale of securities; illegally using corporate funds for wages, loans, subsistence and travel; acting as brokers or dealers in the sale of securities without proper authority; various kindred activities. The complaint also requests the appointment of a receiver.

The action was tried before an Official Referee and judgment was entered upon the decision of the Referee, enjoining Uran and other defendants as requested in the complaint, but dismissing the complaint on the merits as to Colby and one Martino. Findings of fact and conclusions of law were made by the Referee. He concluded " That any representations and acts made by Colby * * * were not done with an intent to defraud or promote the practices complained of by the plaintiff ", and that they " were done without knowledge of any irregularities and without neglect on his part to ascertain such irregularities." It was also concluded that partly as a result of

Colby's investigation, disclosures and reports to the Attorney-General, the fraudulent practices were restrained.

The defendants who were so restrained appealed and we affirmed the judgment (12 A D 2d 990). However, the determination in favor of Colby has never been passed upon by this court. We might simply observe that the conclusions of the Referee are inconsistent with many of his findings of fact relating to Colby. This will be developed later as we discuss Colby's activities in connection with Uran.

We realize that the determination in Colby's favor in the action brought by the People presents a difficult problem. However, this application for the allowance of fees is opposed, not by Uran but by a receiver appointed as the result of the action by the People. The receiver was not a party to that action and the determination in Colby's favor is not binding on him. Furthermore, the receiver was appointed by the court for the very purpose of protecting and preserving the Uran corporate funds for the benefit of defrauded stockholders. His duties require him to resist inroads upon these funds by Colby and other former officers and directors of the corporation. In the furtherance of these obligations, he is properly opposing the present application. He is not estopped from doing this because of the judgment in favor of Colby, nor because of the findings in the People's action to which he was not a party.

The Special Term Justice who denied the application decided that Colby had not been made a party defendant by reason of his having been a director and officer of Uran as required by the first sentence of said section 64 of the General Corporation Law. He dismissed the petition for that reason and did not otherwise consider the merits of the application. We agree with the result but disagree with the reasons. It is clear to us that the only reason that Colby was made a party was because he had been a director and officer of Uran. This affirmance is on other grounds.

The receiver contends that the provisions of section 64 are applicable only to the types of action enumerated in section 60 of article 6 of the General Corporation Law. This latter section deals primarily with derivative actions. Section 64 provides: '' Any person made a party to any action, suit or proceeding by reason of the fact that he, his testator or intestate, is or was a director, officer or employee of a corporation shall be entitled to have his reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense of such action, suit or proceeding,

and in connection with any appeal therein, assessed against the corporation or against another corporation at the request of which he served as such director, officer or employee, upon court order, in the manner and to the extent provided by sections sixty-five, sixty-six and sixty-seven of this chapter, and in the instances specified in section sixty-eight of this chapter, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties." However, before we reach the question of the applicability of the above section, it will be helpful if we consider some of Colby's activities.

Uran is a New York State corporation with its principal office in Rochester, New York. It was organized sometime in 1955 by Colby and two others for the purpose of searching for uranium and selling its stock to the general public. Colby was no novice in geological matters. He had three years of college training required for a degree in geological engineering and had done exploratory work in the western states. Mining claims that he and others had made were transferred to the newly formed corporation as part of the consideration for the issuance to him of shares of stock. After incorporation he did certain prospecting and turned over to the corporation a number of claims. In June of 1955 Colby and other officers and directors secured an interview with a reporter of a Rochester newspaper. Thereafter the substance of their statements appeared in the newspaper with their photographs, and a three-column headline, "Area Trio Strike Uranium Ore on New Mexico Prospecting Trip." Extravagant, false and deceptive statements were published concerning the area and richness of the falsely claimed uranium deposits. The interview and publicity were part of a plan to sell Uran stock and to exploit the public. About that time, the capital structure of Uran was changed to permit new and additional stock to be issued. A very active stock selling campaign was conducted by the officers and directors. Colby was then vice-president, secretary and a director. Prior to that time he had sold stock to friends and relatives. In November, 1955 he resigned his offices and directorship and sold part of his stock to another director of the corporation and gave an option for the balance.

In September of 1956 Colby again became active in Uran. He became president and a director in October and held those offices for about one year. He received no compensation as director or officer, but, although it is not too clear, it appears that he was compensated for office work after May, 1957.

Colby and others were again interviewed by the same reporter in June, 1957 and again the content of the interview was published. The Referee found that the statements published were " gross misstatements of fact " concerning the quantity and quality of Uran deposits and the company's potentials. Pictures of Colby and others were included along with these misstatements, in an effort to induce further purchases of stock. About 10 days later a stockholders' meeting was held. Colby was present as presiding officer. The newspaper article was referred to and again false and misleading statements were made by an officer (not Colby) such as " We have millions of tons; we're rich." One hundred seventy-two thousand dollars was obtained from stock sales within a period of two weeks after the June, 1957 publication as compared to a total of $57,000 sold prior thereto. After October, 1957, when Uran's books became available to him, Colby ordered an audit. During the latter period that Colby was associated with the corporation, he prepared progress letters which were mailed to stockholders and was in frequent touch with the other officers and directors of the corporation. Finally, in September, 1957 he procured a chemical analysis of some of the ore and found that the operation would be unprofitable. At that time he was president of the corporation. When he found that the operation could not be profitable, he brought an action in Supreme. Court to " freeze " the assets. That action was compromised and Colby, who had previously resigned, again became a director. Thereafter he complained to the Attorney-General with the result that the People's action against Uran and others including Colby was started. (Many of the facts that we have recited are found in the Referee's findings and conclusions and his memorandum decision. Some are from the record on appeal on file in our court upon the appeal from the judgment in the People's action.)

Most of the time that Colby held office and was a director, Uran was actively engaged in the sale of its stock. It does not appear that Colby ever did anything to retract or correct any of the fraudulent misrepresentations in newspapers or otherwise, made to stockholders and the general public, which resulted in such sales. The Referee found that Colby did not sell or promote the sale of stock. However, it must be remembered that he was a director and officer when sales were made and that such sales resulted from activities in which he participated and to which he gave at least his tacit approval.

The Referee said in his opinion that " The acts and representations attributed to * * * Colby although being

fraudulent practices in a technical sense, were honestly made in complete good faith.'' He concluded ''That to restrain a person [Colby] of a constitutional right, who exerted his efforts to prevent *further* losses to stockholders, and *further* acts of fraudulent practices, *upon his learning of such activities,* would be a miscarriage of Justice.'' (italics ours). Apparently the Referee felt that Colby should be rewarded for his belated solicitude for the stockholders whom he had assisted in defrauding.

Nevertheless, Colby now seeks a portion of the fund which has been set aside for the benefit of defrauded stockholders. We cannot forget that Colby was one of the organizers of the corporation, that he was in the scheme from the time of its inception until approximately the time that he found that it could not be a paying venture. He personally sold some stock and participated in all sales until a time when conditions did not appear to be favorable. He then sold a portion of his own stock and gave an option for the balance. Just what consideration he received does not appear. He lent his name and his photograph and his efforts to fraudulent sales and did nothing whatsoever to correct misstatements or misrepresentations. The Referee found that the public and stockholders were actually deceived and defrauded. Apparently, because of Colby's belated assistance to the Attorney-General, which may well have been to serve his own purposes, he seeks to be in the favored position afforded by section 64 of the General Corporations Law to an officer or director who is sued because of efforts that he has put forth in behalf of a corporation and its stockholders. All of Colby's efforts were directed against stockholders.

Without going into an analytical discussion of the purposes and objects of section 64 and similar sections, we cannot conceive that it was within the legislative contemplation that a person in Colby's position would be benefited by these statutory provisions and certainly not to the extent of permitting him to divert to himself a portion of a fund being preserved for defrauded stockholders.

There is little precedent in New York State of an interpretive nature. Always present in the consideration of this problem is *Matter of Schwarz* v. *General Aniline & Film Corp.* (305 N. Y. 395). Much has been written about the *Schwarz* case and its effects (e.g. 67 Harv. L. Rev. 514, Note; 63 Yale L. J. 253, Note; Commission and the Courts, FULD, J., 40 Corn. L. Q. 646, 663; Commission and the Corporation Laws, Israels, 40 Corn. L. Q. 686, 691–692). Actually, in its relation to the

present problem, the *Schwarz* case stands for little more than the fact that there can be no reimbursement for moneys expended by a director in the defense of a criminal proceeding as distinguished from a civil action. Such a construction is of very little help in the present determination because it is clear that the People's action, under the Martin Act, was civil. Certain violations of the Martin Act, like violations of the Sherman Anti-Trust Act, may be prosecuted, either civilly or criminally, at the option of the prosecutor (General Business Law, §§ 352-C, 353, 358). In the present case, a civil forum was chosen.

The case of *Diamond* v. *Diamond* (307 N. Y. 263) is more helpful. There the question was not the nature of the underlying suit, since it was a stockholders' derivative action, but rather whether section 64 was mandatory in application merely because petitioner had successfully defended the underlying suit. The stockholders' suit was dismissed by the trial court because the two sole stockholders of the corporation, one of whom was the plaintiff and the other the defendant, were equally guilty of wrongdoing as between themselves and between each of them and the corporation. In so doing, however, the trial court had awarded expenses to the defendant on the theory that section 64 made this a mandatory requirement. The Court of Appeals affirmed the dismissal of the complaint but reversed the award of legal expenses on the basis of the exception in section 64 to the effect that the assessment against the corporation of a successful defendant's expenses is not to be ordered " ' in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties ' " (p. 267). The court observed that " Rewarding faithless officers and directors was no part of its [Section 64] purpose." Finally, the following passage from *Briggs* v. *Easterly* (62 Barb. 51, 60–61) was quoted with approval: " To impute such an intention would be an unjust and unmerited reproach upon the statute, and the legislature which enacted it. It would place the statute in opposition to the fundamental principles not only of law but of good conscience and morals."

It seems, therefore, that proof of applicant's good faith is a basic requirement. This proof is completely lacking. Indeed, the record clearly compels an opposite conclusion.

It may well be argued that section 64, under which the petitioner concededly seeks to recover, is applicable only to stockholders' derivative actions. There is authority for such

view (*Matter of Schwarz* v. *General Aniline & Film Corp., supra,* pp. 401–404; ·Current Status of Corporate Directors' Right to Indemnification, Bishop, 69 Harv. L. Rev. 1057). These views need not be analyzed or discussed herein because of the basic tenet of our decision that the law does not contemplate recovery by a petitioner such as Colby, in any event.

The order appealed from must be affirmed.

HALPERN, J., concurs in result. Present — WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and McCLUSKY, JJ.

Order unanimously affirmed without costs of this appeal to any party, and petition dismissed.